OKOCHA, Appellant,

v.

**FEHRENBACHER et al., Appellees; STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Appellant.**

[Cite as *Okocha v. Fehrenbacher* (1995), 101 Ohio App.3d 309.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 65458, 65645, 65656 and 67254.

Decided Feb. 15, 1995.

310

*Okocha & Associates, Nwabueze V. Okocha* and *Kojo Agyeman*, for appellant Nwabueze V. Okocha.

*Edgar H. Boles*, for appellees.

*John A. Valenti*, for appellant State Automotive Mutual Insurance Company.

PATRICIA ANN BLACKMON, Judge.

This is a consolidated appeal from a judgment of the Cuyahoga County Court of Common Pleas, which ruled in favor of Elaine Fehrenbacher, defendant-appellee, in an action for unpaid legal fees filed by plaintiff-appellant, Nwabueze Okocha. Okocha's claim arose out of a contingent fee arrangement with Fehrenbacher in which Okocha agreed to handle Fehrenbacher's discrimination claim against her former employer, Southwest General Hospital. Under the contingent fee agreement, which was signed by Elaine and Dan Fehrenbacher on February 14, 1990, Okocha agreed to handle Fehrenbacher's claim for a retainer fee of $12,000 plus forty percent of any recovery. On February 23, 1990, Fehrenbacher paid $6000 as a down payment on the retainer fee and agreed to pay the remaining $6000 in a subsequent payment.

In July 1990, Okocha negotiated a settlement of Fehrenbacher's claims against Southwest General. Southwest agreed to pay $5945.23. The Fehrenbachers and Okocha attended a meeting on September 17, 1990, during which the Fehrenbachers were to sign the release form that outlined the terms of the settlement. Elaine Fehrenbacher refused to sign the agreement as prepared and notified Okocha to negotiate for additional favorable terms. Southwest General agreed to the requested terms and the release form was updated to reflect the added provisions. On October 8, 1990, the Fehrenbachers and Okocha met with Southwest General's Attorney, Hilary Taylor. The Fehrenbachers signed the release and Taylor gave Okocha a check for $5945.23. After a clandestine conversation between Taylor and Okocha, Taylor left with the check. Okocha told the Fehrenbachers that there was a typographical error in the check and that Taylor had agreed to have it corrected. Okocha refused the Fehrenbachers' request to return the signed release. Later that evening, the Fehrenbachers fired Okocha.

The following day, October 9, 1990, Okocha received the $5945.23 settlement check from Southwest General. The check, drawn on Southwest General's

account at Society National Bank, was made out to "Helen [*sic*] Fehrenbacher and Nwabueze Okocha, Esq." and dated September 13, 1990. Okocha tried unsuccessfully to get Fehrenbacher to come to his office to endorse the check. On or about October 23, Okocha deposited the check into his trust account at Cardinal Federal Savings Bank, then withdrew it and applied it to his outstanding fees and expenses. In an October 23, 1990 settlement statement mailed to the Fehrenbachers, Okocha itemized the fees and expenses as follows:

| | |
|---|---|
| Amount recovered | $5945.23 |
| Attorney's fee (40%) | (2378.09) |
| Balance | $3567.14 |
| | |
| Expenses | |
| Photocopy | $ (9.00) |
| Postage | (21.00) |
| Facsimile | (24.85) |
| Total expenses | (54.85) |
| | |
| Balance brought forward | $3512.29 |
| | |
| Outstanding retainer fee | ($6000.00) |
| | |
| Total amount due | ($2487.71) |

Okocha demanded payment of the $2487.71 balance. When Fehrenbacher failed to pay any of the amount owed, Okocha filed a complaint seeking the balance of the amount owed under the fee agreement. The Fehrenbachers counterclaimed against Okocha for breach of contract, conversion, fraud, infliction of emotional distress, and violation of Consumer Sales Practice Act. The Fehrenbachers also filed a third-party complaint against Okocha & Associates (Okocha's law partnership), Mitchell Johnson (an associate at Okocha & Associates), Society National Bank, Cardinal Federal Savings Bank, and Southwest General Hospital. All of the defendants named in the third-party complaint were later dismissed from the action except Mitchell Johnson and Okocha & Associates. Mitchell Johnson was dismissed during trial when the trial court granted his motion for directed verdict on April 20, 1993.

After a jury trial, Fehrenbacher was awarded $5945.23 in damages. On April 29, 1993, Okocha filed a notice of appeal from the jury verdict (case No. 65458). The trial court set a May 3, 1993 hearing on punitive damages. Fehrenbacher filed a motion for attorney fees and prejudgment interest. Fehrenbacher also filed a motion to join State Automobile Mutual Insurance Company ("State Auto") as a party to the action. On May 4, 1993, the trial court entered its final judgment in the case. Okocha and Okocha & Associates were ordered to pay $50,000 in punitive damages and $17,500 in attorney fees. State Auto was joined as a party and ordered to pay Fehrenbacher $5945.23 on the replevin bond.

On June 2, 1993, in case No. 65645, State Auto appealed from the trial court's decision to add State Auto as a new third-party defendant. On June 3, 1993, Okocha appealed from the final judgment (case No. 65656). On March 9, 1994, the court of appeals determined that numerous pleadings were missing from the appellate record and that the finality of the trial court's judgment was questionable. The court of appeals ordered the appellants to complete the record. The supplemental record included a revised journal entry dated April 28, 1994 that journalized the dismissal of Southwest General Hospital, Society National Bank, and Cardinal Federal Savings Bank. Okocha appealed from the revised journal entry on May 9, 1994 (case No. 67254). Case No. 67254 was consolidated with the other cases. Okocha assigns ten errors for review.[1] State Auto assigns three errors for review.[2]

■ In his first assignment of error, Okocha argues that the trial court erred in overruling the motions for summary judgment filed by Okocha and Mitchell Johnson. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts, and written stipulations of facts show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). When evaluating a motion for summary judgment, the trial court must construe the evidence most strongly in favor of the nonmovant. *Id.* Consequently, doubts must be resolved in favor of the nonmovant. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140. The nonmovant may not rest on his pleadings, however, but must produce evidence on any issue for which he bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

■ Okocha's first assignment of error raises the issue of whether material issues of fact exist concerning the Fehrenbachers' liability under the fee agreement. The agreement provided:

"We are offering you the contingency fee arrangement because of your lack of ability to pay. Since these services are rendered on a contingency basis, this means that we are willing to invest our time and services as described above, for a percentage of the amount of money received. This percentage is $40.00. [*Sic.*] In addition, you would be required to pay a nonrefundable retainer fee of $12,000.00."

---

1. See Appendix. The assignments of error set forth in case No. 67254 raised essentially the same issues as the other consolidated cases and are not set forth separately in the Appendix.

2. See Appendix.

Both parties agree that the Fehrenbachers paid $6000 of the $12,000 retainer fee. However, Fehrenbacher claimed that Okocha breached the fee agreement by settling her case against Southwest General without her consent. The contract provided:

"It is further understood and agreed upon that we are authorized to negotiate for a settlement or compromise of the above mentioned lawsuit, but no settlement or compromise may be made without your consent and approval."

In her brief opposing Okocha's motion for summary judgment, Helen Fehrenbacher claimed that Okocha settled her lawsuit "in contravention to her authority, and then refused to rectify the mistake." In her affidavit, Fehrenbacher stated that Okocha was authorized to settle her claim against Southwest General for three months' severance pay. However, Okocha settled the case for two and one-half months' severance pay. She maintains that Okocha refused her request to renegotiate the unauthorized settlement. We find this evidence established a genuine issue of material fact as to whether Okocha breached the fee agreement.

■ We also find a genuine issue of material fact existed as to whether Okocha & Associates misrepresented to the Fehrenbachers that Mitchell Johnson was an attorney. In their complaint against Okocha & Associates, the Fehrenbachers claimed that Okocha introduced Mitchell Johnson as an associate. In his affidavit accompanying his motion for summary judgment, Johnson denied ever telling the Fehrenbachers that he was an attorney and denied that Okocha presented him as an attorney. Because these material facts were in dispute, the trial court properly denied Okocha & Associates' motion for summary judgment.

■ Okocha also claims that the trial court should have granted his motion for summary judgment on the Fehrenbachers' counterclaim and third-party complaint. He argues that the release signed by the Fehrenbachers constitutes an absolute bar to a later action or claim arising out of the same transaction. We disagree.

The release executed by the Fehrenbachers and Southwest General Hospital on October 10, 1990 provided:

"Elaine Fehrenbacher * * * does release and forever discharge and by these presents, does for herself, her heirs, executors, and administrators, release and forever discharge *Southwest, its related companies, administrators, agents, successors, assigns, employees and attorneys*, of and from all manner of actions * * * including but not limited to all matters alleged in and related to the EEOC charge number 220900818 which was pending before the Equal Employment Opportunity Commission * * *." (Emphasis added.)

A release of a cause of action for damages is an absolute bar to any claim encompassed within the release. *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 552 N.E.2d 207. The release reflected a discharge of all claims which Fehrenbacher had against Southwest. The language of the release cannot reasonably be interpreted as a waiver by Fehrenbacher of her claims against Okocha. A release is a contract, subject to all requirements for a valid contract, including that of consideration. See *Goldstein v. D.D.B. Needham Worldwide, Inc.* (S.D.Ohio 1990), 740 F.Supp. 461. There was no consideration for the release of any claims by Fehrenbacher against Okocha. By its terms, the release operated only to waive claims by Fehrenbacher against Southwest General and had no effect upon claims by Fehrenbacher against Okocha. The trial court correctly found the release did not bar Fehrenbacher's claims against Okocha.

Okocha next argues that the trial court should have granted his motion for summary judgment on Fehrenbacher's conversion claim. Conversion is defined as any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with his rights. *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 24 OBR 160, 493 N.E.2d 289. Okocha argues that, as a matter of law, he could not be held liable for conversion of funds to which he was legally entitled.

As discussed above, we find that a material issue of fact existed as to whether Okocha violated the fee agreement with Fehrenbacher. However, even if he was entitled to the balance of his fee, there is no evidence that Fehrenbacher had violated the fee agreement at the time Okocha seized the settlement check. There is no evidence in the record that Okocha made any demand for payment of the $6000 balance of his retainer and the forty percent contingency fee before he negotiated the settlement check from Southwest General. The original fee agreement between Fehrenbacher and Okocha & Associates did not specify a time period for payment of the $6000 retainer balance. Okocha did not send Fehrenbacher any letters requesting additional payment until after he had negotiated the settlement check. At trial, Okocha admitted the $6000 balance was not discussed during the October 8 meeting with the Fehrenbachers.

On October 18, 1990, Okocha & Associates sent a letter to Fehrenbacher. The letter did not demand payment of the $6000 retainer balance or the forty percent contingency fee but asked Fehrenbacher to come and endorse the settlement check by noon on October 22. The next letter sent by Okocha and Associates to Fehrenbacher was dated October 23, 1990. In the letter, Okocha told Fehrenbacher that he had applied the settlement check to her outstanding legal fees and demanded $2487.71 as the balance due. This letter was the first request by Okocha & Associates for payment of fees due under the fee agreement, and it was mailed after Okocha had negotiated the check. Under the circumstances, Okocha

was not entitled to seize Fehrenbacher's settlement check in satisfaction of a debt that he had not yet even attempted to collect.

■ Okocha argues that his equitable attorney's lien authorized him to exercise control over the settlement check. We disagree. Although equitable attorneys' liens may, in some circumstances, be enforced through legal actions, his equitable attorney's lien did not give Okocha the authority to summarily seize the settlement check and apply it to his fee. Additionally, the equitable attorney's lien does not authorize him to negotiate a check made out jointly to him and Fehrenbacher. R.C. 1303.15 provides that a check made out to two payees, if not in the alternative, must be signed by both of them. Okocha clearly violated this statute by negotiating the check without Fehrenbacher's signature.

■ Okocha also argues that Fehrenbacher's claims against him amounted to malpractice and, consequently, were barred by the one-year statute of limitations for attorney malpractice actions. In its journal entry of May 4, 1993, the trial court recognized that Fehrenbacher's malpractice claims were time-barred. However, at the time Okocha filed his motion for summary judgment, there was a dispute between the parties as to when the statute began to run for the Fehrenbachers' malpractice action. R.C. 2305.11 provides that an action for negligence against an attorney must be brought within one year after the date the cause of action accrues. When determining the accrual date of a legal malpractice action, the trial court must explore the facts of the action and determine when the injured party became aware or should have become aware of the seriousness of the alleged legal problem, and aware that the alleged damage or injury was related to specific legal transaction previously rendered to him, and determine whether the damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of the damage or injury. *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 388, 528 N.E.2d 941, 944–945. Okocha claimed that the attorney-client relationship ended when the Fehrenbachers fired him on October 9, 1990. The Fehrenbachers claimed that the attorney-client relationship did not end because Okocha continued to act as their attorney. Summary judgment is not proper where a question of fact exists about when the attorney-client relationship terminated between the parties. *Koch v. Gross* (1990), 64 Ohio App.3d 582, 582 N.E.2d 51. See, also, *Landis v. Hunt* (1992), 80 Ohio App.3d 662, 610 N.E.2d 554.

In addition, the Fehrenbachers argued that they did not discover some of the facts indicating malpractice until August 1991. In *Harrell v. Crystal* (1992), 81 Ohio App.3d 515, 611 N.E.2d 908, the court held that the discovery rule may extend the time for bringing a legal malpractice action. Because at the time Okocha filed his motion for summary judgment, there was a dispute between the parties as to when the attorney-client relationship ended, and when the Fehren-

bachers became aware or should have become aware of the facts indicating malpractice, summary judgment was properly denied.

Okocha also argues that he should have been granted summary judgment on Fehrenbacher's claim of negligent infliction of emotional distress. In order to defeat Okocha's motion for summary judgment, Fehrenbacher had to go forward with evidence that Okocha intended to cause her emotional distress or that he knew or should have known that his conduct would cause her emotional distress, that Okocha's conduct was outrageous, extreme and so far beyond the bounds of decency as to be considered intolerable in civilized society, that Okocha's conduct proximately caused her injury, that Fehrenbacher's psychic injury was serious, and that no reasonable person could be expected to endure it. *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 588 N.E.2d 280.

Okocha argues that Fehrenbacher failed to go forward with any facts to establish any emotional injury. However, our review of the record indicates Fehrenbacher submitted an expert report in November 1992 describing her emotional distress. The report, which was issued by a clinical psychologist, listed various conditions including hopelessness, fatigue, chronic back pain, chemical dependency and alcoholism. The report stated that Fehrenbacher overdosed on pain medicine in October 1990. The report, when viewed most strongly in favor of Fehrenbacher as the nonmovant, is sufficient to raise a question of fact as to whether Fehrenbacher suffered from serious emotional distress and whether her distress was caused by Okocha.

Okocha also argues that Fehrenbacher's fraud claim was not pleaded with sufficient particularity. Civ.R. 9(B) requires that in actions for fraud, the circumstances constituting fraud or mistake shall be stated with particularity. In determining whether a fraud claim is sufficiently pleaded, the court must determine whether the allegation is specific enough to inform the defendant of the act complained of, and to enable the defendant to prepare an effective response and defense. *Baker v. Conlan* (1990), 66 Ohio App.3d 454, 585 N.E.2d 543. The plaintiff must specify the statements claimed to be false; he must specify the time and place where the statements were made; he must identify the defendant claimed to have made the statement. *Korodi v. Minot* (1987), 40 Ohio App.3d 1, 531 N.E.2d 318. Our review of the record indicates Fehrenbacher met this burden. In an affidavit attached to her brief in opposition to Okocha's motion for summary judgment, Fehrenbacher listed several allegedly false statements made by Okocha. Her affidavit included the time and place of each statement as well as the identity of the defendant who made each statement. We find that Fehrenbacher pleaded her fraud claim with sufficient particularity to comply with Civ.R. 9(B). The affidavit provided Okocha with sufficient informa-

tion about the allegedly fraudulent statements to enable him to prepare his defense.

For the foregoing reasons, Okocha's first assignment of error is hereby overruled.

Okocha's second, third, and fourth assignments of error pertain to the trial court's denial of his motions for a directed verdict and for judgment notwithstanding the verdict. Analysis of a trial court's decision to deny motions for directed verdict and/or judgment notwithstanding the verdict requires an analysis of the complete record at trial. See App.R. 9(B). However, Okocha has chosen to provide only a partial transcript of the trial proceedings. Without a complete transcript of the trial proceedings, we must presume regularity below. See *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384. Consequently, we overrule Okocha's second, third, and fourth assignments of error.

In his fifth assignment of error, Okocha argues that the trial court erred in giving instructions to the jury before informing him of its decision regarding proposed jury instructions on conversion and attorney liens. We have no transcript of the trial court's discussion about jury instructions. The actual jury charge transcript is in the record, but the record contains none of the preliminary discussions about proposed jury instructions. Without an appropriate transcript, we must again presume regularity in the trial court proceedings. Okocha's fifth assignment of error is overruled.

In his sixth assignment of error, Okocha claims that the trial court erred in awarding Fehrenbacher attorney fees without first holding an evidentiary hearing to determine the amount of time spent and the nature of the services rendered. The determination of the amount of attorney fees to be awarded in a tort action is a matter for the trial court. *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 663, 590 N.E.2d 737, 743. Although Okocha cites several cases that held that the trial court must hold an evidentiary hearing before awarding attorney fees, those cases all pertain to attorney fees sought under R.C. 2323.51 as sanctions for frivolous conduct. The attorney fees sought by Fehrenbacher in the case *sub judice* were not sought under R.C. 2323.51. Therefore, the cases cited by Okocha are inapplicable. Okocha has not presented us with any applicable authority that mandates a hearing before an award of attorney fees other than those sought under R.C. 2323.51.

The amount of attorney fees is a matter within the discretion of the trial court and the court's decision will not be reversed unless the trial court is shown to have abused its discretion. See *Russell v. Smith* (1992), 81 Ohio App.3d 784, 788, 612 N.E.2d 393, 395. The court's determination of fees must be based on

factors such as the actual value of the necessary services performed, the time spent by the attorneys and the reasonable value of that time. *In re Hinko* (1992), 84 Ohio App.3d 89, 95, 616 N.E.2d 515, 518–519.

 Okocha also argues that the record does not contain any evidence to support the fee award. However, because Okocha has not filed a complete transcript of the proceedings below, we are unable to determine whether the trial court was presented with the necessary documentation. Without a complete record, we must presume the trial court properly considered supporting documentation when determining the amount of attorney fees to be awarded. See *Tyrrell v. Investment Assoc., Inc.* (1984), 16 Ohio App.3d 47, 50, 16 OBR 50, 53–54, 474 N.E.2d 621, 625 (the burden is on the appellant to provide a transcript that exemplifies the claimed error). Okocha does not argue that the amount of attorney fees claimed by Fehrenbacher was unreasonable or excessive. Under the circumstances, we find no error in the trial court's award of attorney fees.

In his seventh assignment of error, Okocha argues that the trial judge made prejudicial remarks before the jury. Canon 3 of the Code of Judicial Conduct provides: "A judge should perform the duties of his office impartially and diligently." Canon 3(C)(1) provides:

"A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]"

 However, a trial judge is presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity. *State v. Wagner* (1992), 80 Ohio App.3d 88, 93, 608 N.E.2d 852, 855–856, citing *State v. Richard* (Dec. 5, 1991), Cuyahoga App. No. 61524, unreported, 1991 WL 261331. The existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party. *In re Adoption of Reams* (1989), 52 Ohio App.3d 52, 557 N.E.2d 159. A judge's rulings of law are legal issues subject to appeal, and are not by themselves evidence of bias or prejudice that will provide grounds for disqualification of the judge. *In re Disqualification of Corts* (1988), 47 Ohio St.3d 601, 546 N.E.2d 928.

 In the case *sub judice*, Okocha claims that the trial court's bias against him was evidenced by improper remarks, limitations upon the cross-examination of witnesses, improper outbursts, refusal to meet with counsel about jury instructions, and aid to the opposing party. The only comment specifically identified by Okocha is the following statement: "She'd have been better off

without a lawyer and just keeping her $6,[0]00, wouldn't she?" Okocha objected to the statement and moved for a mistrial. His motion was denied.

We find that the above statement did not evidence a predisposition of the merits of the case. The court's comment was made after Okocha stated that Fehrenbacher had paid Okocha $6000 of a $12,000 retainer fee and that the settlement reached in her case was for $5945.23. Okocha stated that, after his forty percent contingency fee, Fehrenbacher was entitled to only $3512.29 of the settlement amount after expenses. The court's statement only repeated the obvious—that the amount of fees Fehrenbacher paid Okocha was greater than the amount of the settlement. This statement has no bearing on the ultimate issue in Okocha's action—whether Okocha was entitled to recover the balance of his fees under the fee agreement. Okocha has not met his burden of overcoming the presumption of judicial integrity. Therefore, his seventh assignment of error is overruled.

In his eighth assignment of error, Okocha argues that the trial court erred in awarding prejudgment interest without first conducting an evidentiary hearing. However, his argument is directly contradicted by *Novak v. Lee* (1991), 74 Ohio App.3d 623, 600 N.E.2d 260, which held that an evidentiary hearing is not mandatory for an award of prejudgment interest. When reviewing a trial court's ruling on prejudgment interest, we must apply an abuse of discretion standard. *Marous v. Ohio Bell Tel. Co.* (1992), 80 Ohio App.3d 306, 609 N.E.2d 192. See, also, *Cox v. Fisher Fazio Foods, Inc.* (1984), 13 Ohio App.3d 336, 13 OBR 414, 469 N.E.2d 1055.

In order to qualify for prejudgment interest, the movant must show that a judgment was entered on his behalf in a civil action based upon the tortious conduct of the defendant and that the case was not disposed of via settlement. *Vanderhoof v. Gen. Acc. Ins. Group* (1987), 39 Ohio App.3d 91, 529 N.E.2d 953. Both requirements were met in the case *sub judice*. Okocha has not shown that the trial court abused its discretion in awarding prejudgment interest to Fehrenbacher. Consequently, his eighth assignment of error is overruled.

Okocha also assigns error in the trial court's continued exercise of jurisdiction over the case after he had filed his notice of appeal. He claims that the April 29, 1993 filing of the notice of the appeal divested the trial court of its jurisdiction. We disagree.

The doctrine of the law of the case provides that, after entry of judgment, a trial court is free to change its rulings on any issues of law not previously decided and not complained of on appeal. *Bodo v. Nationwide Ins. Co.* (1991), 75 Ohio App.3d 499, 599 N.E.2d 844. As of April 29, 1993, the trial court had not decided the issues of attorney fees or prejudgment interest. The

matter of punitive damages was to be decided at a hearing to be held May 3, 1993. None of these issues was addressed by Okocha's notice of appeal. The trial court did not err in ruling upon the issues of punitive damages, attorney fees and prejudgment interest. Okocha's ninth assignment of error is without merit.

 Finally, Okocha claims that the trial court's punitive damages award was excessive. The purpose of punitive damages is to punish a defendant for wrongful conduct. *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 660, 590 N.E.2d 737, 740–741. The amount of punitive damages awarded should be no more and no less than that sufficient to achieve the purpose of punishment and deterring conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable. *Gen. Environmental Science Corp. v. Horsfall* (N.D.Ohio 1992), 800 F.Supp. 1497. The amount of punitive damages to be awarded rests largely within the discretion of the trial court. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 543 N.E.2d 464. The award will not be reversed unless it is based upon passion and prejudice.

We find no evidence that the trial court abused its discretion in awarding damages. Consequently, we overrule Okocha's tenth assignment of error. Having found no merit to any of Okocha's assignments of error, we affirm the trial court's judgment against him.

 In the first of its three assignments of error, State Auto argues that the trial court lacked jurisdiction to add State Auto as a defendant upon Fehrenbacher's motion. State Auto argues that Fehrenbacher should have served State Auto with a summons and complaint as provided under Civ.R. 14. We agree.

"Civ.R. 14(A) requires that the 'defending party'/third party plaintiff file and serve upon the third party defendant a third party complaint." *State ex rel. Meigs Cty. Dept. of Human Services v. Klein* (Nov. 10, 1993), Meigs App. No. 93 CA 508, unreported, 1993 WL 472881.

 In the case *sub judice*, State Auto was never served with a summons and complaint. To date, no summons and complaint have been served upon State Auto. Consequently, Fehrenbacher has not properly alleged a claim for relief against State Auto. The trial court had no authority to summarily grant relief that Fehrenbacher did not seek against a party she did not sue. See *State Farm Mut. Auto Ins. Co. v. Charlton* (1974), 41 Ohio App.2d 107, 111, 70 O.O.2d 101, 103–104, 322 N.E.2d 333, 336–337. We find, therefore, that State Auto's first assignment of error has merit.

Because we find the trial court improperly entered a judgment against State Auto, we reverse the decision of the trial court as it pertains to State Auto. In

light of our finding, we need not address State Auto's remaining assignments of error. App.R. 12(A)(1)(c).

*Judgment affirmed in part,*
*and reversed in part.*

PATTON, C.J., and SPELLACY, J., concur.

## APPENDIX

### NWABUEZE V. OKOCHA'S ASSIGNMENTS OF ERROR

I. The trial court committed prejudicial error in overruling the motions of plaintiff and third-party defendant for summary judgment.

II. It is reversible error for the trial court to direct a verdict for defendants on the basis of affirmative defense that was not raised in their answer.

III. The trial court committed prejudicial error by granting appellees directed verdict on appellant's complaint for money owed.

IV. The trial court committed prejudicial error by denying appellant's motion for directed verdict and motion for judgment notwithstanding the verdict.

V. The jury verdict in favor of appellee must be reversed since the verdict was not responsive to the issues because incomplete and misleading jury instructions were given [and] as a consequence of such instructions a fair and impartial trial was not had and substantial justice was not done.

VI. The trial court committed prejudicial error by awarding attorney fees without a separate hearing, or any evidence to show the time and nature of services rendered by counsel.

VII. Appellant was denied a fair trial by the actions, conduct and prejudice of the trial judge.

VIII. The trial court committed prejudicial error by awarding appellee prejudgment interest.

IX. The trial court lacked jurisdiction after the filing of a notice of appeal absent a remand by the court of appeals.

X. The punitive damages awarded by the trial court was excessive.

### STATE AUTOMOBILE MUTUAL INSURANCE COMPANY'S ASSIGNMENTS OF ERROR

I. The trial court erred in granting defendant Elaine Fehrenbacher's motion to add State Automobile Mutual Insurance Company as a third-party defendant.

II. The trial court erred in rendering judgment against State Automobile Mutual Insurance Company.

III. The trial court erred when it denied State Automobile Mutual Insurance Company its right to due process and its right to a jury trial.