MONASTRA, Appellee,

v.

D'AMORE, Appellant.

[Cite as *Monastra v. D'Amore* (1996), 111 Ohio App.3d 296.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69378.

Decided April 1, 1996.

Carl C. Monastra, pro se.

Savoy, Bilancini, Flanagan & Kenneally and Patrick M. Flanagan, for appellant.

Reid, Berry & Stanard and D. Cheryl Atwell, for appellee Turbow, Monastra & Mandell.

JAMES M. PORTER, Judge.

Defendant and third party plaintiff-appellant Regina D. D'Amore appeals from summary judgments entered in favor of plaintiff-appellee Carl C. Monastra, denying her legal malpractice counterclaim and awarding plaintiff attorney fees for representing D'Amore in her divorce proceedings. Defendant contends the trial court erred in holding that D'Amore's legal malpractice claims were barred by the one-year statute of limitations, abused its discretion when it denied her extensions of time to respond to dispositive motions, and committed other procedural errors which unfairly prejudiced her. We find merit to the appeal and reverse.

This case arose out of Monastra's legal representation of D'Amore in divorce proceedings with her former husband, John Melkon, which originated in July 1991. Monastra filed the divorce complaint on behalf of D'Amore against her husband on August 30, 1991. By letter dated March 22, 1993, D'Amore discharged Monastra due to his failure to answer her telephone calls and failure to make any progress in her case in almost two years. She directed him to turn over his papers to David Arnold of Weston, Hurd, Fallon, Paisley & Howley. D'Amore eventually settled her divorce case in February 1994 on the eve of trial.

On April 20, 1994, Monastra filed the instant suit in the Cuyahoga County Court of Common Pleas against D'Amore, alleging that she breached a written contract for his services by failing to pay his bill in the amount of $30,635.17 for representing her in the divorce action from July 16, 1991 to March 22, 1993. His billing also included entries for services rendered on March 31, 1993, April 28, 1993 and June 15, 1993 at no charge while cooperating in the transfer of responsibility to Arnold, D'Amore's new divorce counsel.

On April 28, 1994, D'Amore's counsel, Richard Gibbs Johnson, filed a motion for more definite statement, and Monastra filed an amended complaint on May 18, 1994.

On May 26, 1994, D'Amore filed a counterclaim against Monastra and a third-party complaint against Monastra's law firm, Turbow, Monastra & Mandell, alleging legal malpractice. Monastra and his law firm answered on June 27, 1994. D'Amore's motion for a more definite statement was denied on August 8, 1994; she answered the amended complaint on August 25, 1994.

Discovery ensued. Depositions were taken of D'Amore, Monastra and Arnold. On November 17, 1994, a pretrial was held. At that time, the trial court set a schedule which included (1) dispositive motions to be submitted on or before March 24, 1995 with responsive briefs to be filed within thirty days, (2) D'Amore's expert report on her malpractice claim and Monastra's expert report on his claim for attorney fees were to be provided by May 1, 1995, (3) responsive expert

reports were due by June 1, 1995, (4) all discovery was to be completed by July 17, 1995, and (5) the case was scheduled for trial on September 11, 1995.

Neither side filed a dispositive motion by March 24, 1995. Pursuant to a motion for leave, counsel for Monastra and his law firm were given until April 14, 1995 to file their motion for summary judgment. A joint summary judgment motion to dismiss D'Amore's legal malpractice counterclaim and third-party complaint was filed on April 14, 1995 with supplemental documentation and D'Amore's deposition. The motion was based on the one-year statute of limitations and waiver of legal malpractice by D'Amore's settlement of her divorce proceedings.

On April 28, 1995, three days before the expert reports were due, D'Amore's counsel requested an extension of time to produce her initial expert report regarding her legal malpractice claims for an indefinite period pending ruling on Monastra's summary judgment motion. The request was based on avoiding the expense of obtaining a malpractice expert which could prove unnecessary if Monastra's motion for summary judgment was granted.

D'Amore's response to the summary judgment motion was due on May 17, 1995. On May 15, 1995, D'Amore's counsel requested a thirty-day extension of time to respond to the motion for summary judgment by June 15, 1995, due to the difficulty of the issues presented and his heavy docket and trial schedule. Both requests for extension were opposed by Monastra and his law firm.

On May 25, 1995, the trial court denied D'Amore's motion to extend time to provide the expert's report. On May 26, 1995, the motion to extend her time to respond to the motion for summary judgment was also overruled.

On June 9, 1995, without leave of court, Monastra, *pro se*, filed a motion for summary judgment requesting judgment on his claim for attorney fees. The deadline extended by the court for submitting dispositive motions had expired April 14, 1995 and the case was set for trial on September 11, 1995. "If the action has been set for * * * trial, a motion for summary judgment may be made only with leave of court." Civ.R. 56(A).

On June 15, 1995, D'Amore's counsel filed a motion for reconsideration of the court's denial of his motion for extension to file a response to Monastra's summary judgment by July 15 and a motion for reconsideration of the court's denial of his motion for extension of time to file the expert report. The motion for reconsideration was again based on the expense of an expert report which might prove unnecessary if the motion for summary judgment was granted, defense counsel's heavy docket and trial schedule, unfairness to D'Amore, the nature of the motion for summary judgment, which could have been filed much sooner, and illness in D'Amore's family which prevented counsel from meeting

with his client. The motions for reconsideration were opposed by Monastra and his law firm. On the day following these filings for reconsideration, Johnson, D'Amore's counsel, filed a motion to withdraw as counsel without explanation.

On June 28, 1995, the trial court entered orders granting Monastra's unopposed motion for summary judgment against D'Amore's counterclaim and third-party complaint for legal malpractice and overruling her counsel's request for reconsideration of extensions of time. On the same date, the court granted D'Amore's counsel's motion to withdraw conditioned on D'Amore's retaining new counsel.

On July 6, 1995, new counsel, Patrick Flanagan, entered his appearance on behalf of D'Amore. New counsel moved to strike Monastra's pending motion for summary judgment on his fee claim to recover for legal services, moved to oppose original defense counsel's motion to withdraw, and moved for an extension of time to respond to Monastra's motions for summary judgment.[1] New counsel's motions for an extension of time to respond to the various motions for summary judgment and to obtain an expert report were accompanied by affidavits of new counsel setting forth facts supporting the extensions requested, *i.e.,* extensive time needed to review the file and his heavy caseload.

On July 11, 1995, new counsel moved for a continuance of the trial date set for September 11, 1995 regarding Monastra's attorney fees and also requested time to respond to Monastra's motion for summary judgment regarding the fees and to obtain an expert report.

On July 13, 1995, Monastra's motion for summary judgment on his attorney fees claim was granted in the amount of $30,635.17 plus interest from March 22, 1993. The trial court ruled new counsel's motions for extension of time, motion to strike, motions for extensions to identify experts and continuance of trial were "moot."

On August 2, 1995, a timely notice of appeal was filed on behalf of D'Amore appealing the trial court's rulings on the motions for summary judgment, the motions for extensions of time, the motion to strike and the motions for extension to file expert reports.

We will address D'Amore's assignments of error in the order asserted and together where it is appropriate for discussion.

---

1. Although the entries granting Monastra's motion for summary judgment and the withdrawal and denying extensions were filed by the court on June 28, 1995, the entries were not mailed to counsel of record until July 6, 1995 and were not provided to new counsel until July 10, 1995.

"I. The trial court erred when it granted the plaintiff's and third-party defendant's motions for summary judgment on the defendant's counterclaim and third-party complaint for legal malpractice."

Under Civ.R. 56, summary judgment is proper when:

"(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138, 140.

However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra*, 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

This court reviews the lower court's granting of summary judgment *de novo. Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("we review the judgment independently and without deference to the trial court's determination"). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1143–1144.

The trial court did not identify the grounds on which it granted summary judgment in favor of Monastra, dismissing D'Amore's malpractice counterclaim. Based on the arguments advanced in support of the motion, we can only conclude

that the motion was granted on the basis of the one-year statute of limitations or waiver of the claim by settlement of the divorce proceedings.

■ We find no merit to Monastra's claim that D'Amore's divorce settlement with her husband waived her legal malpractice claim against him. If the evidence should show that Monastra's defective representation diminished D'Amore's ability to reach a successful settlement or succeed at trial, we see no reason why a waiver of that malpractice claim should be implied by reason of the settlement.

The cases cited by Monastra to support his argument that defendant waived her legal malpractice claim are not persuasive. In *Sawchyn v. Westerhaus* (1991), 72 Ohio App.3d 25, 593 N.E.2d 420, and *Estate of Callahan v. Allen* (1994), 97 Ohio App.3d 749, 647 N.E.2d 543, the settlements and malpractice claims were so intertwined that they could not exist separately. In *Sawchyn* the legal malpractice claim against the attorney was for failure to settle the original claim for punitive damages against the client. Since the matter was eventually settled on appeal without determining if the trial court's award of punitive damages should be reversed or reduced, this court held that "subsequent settlement of the original action on appeal would make it impossible to calculate the value of punitive damages, if any, that would have been determined on appeal in the original action." *Sawchyn* at 28, 593 N.E.2d at 422.

In *Estate of Callahan* the malpractice claim was based on the attorney's alleged violation of the Internal Revenue Service Code. Since the plaintiff settled with the IRS without determining whether the attorney had erred, the court found that the settlement had extinguished the malpractice claim.

In this case, D'Amore claims that she never recovered the amount she should have received for temporary alimony, nor did she receive her share of the accounts she claims that her husband depleted. Therefore, the settlement with her husband did not extinguish her claim for legal malpractice as the damages are still calculable and were not extinguished by the settlement.

We now consider Monastra's second argument alleged in his motion for summary judgment that the statute of limitations for D'Amore's legal malpractice claim had expired.

■ Regardless of the labels that D'Amore used, the gist of the counterclaim is one for legal malpractice and is governed by the one-year statute of limitations in R.C. 2305.11(A). *Bunce v. Parkside Lodge of Columbus* (1991), 73 Ohio App.3d 253, 260, 596 N.E.2d 1106, 1110–1111; *Carrocia v. Carrocia* (1985), 21 Ohio App.3d 244, 246, 21 OBR 260, 262–263, 486 N.E.2d 1263, 1265–1266; *Hibbett v. Cincinnati* (1982), 4 Ohio App.3d 128, 130, 4 OBR 220, 222–223, 446 N.E.2d 832, 834–835.

■    Monastra argued that the termination date of the attorney/client relationship was March 22, 1993 when D'Amore fired him and that D'Amore discovered or should have discovered her claimed injuries by that date. Accordingly, Monastra argues that the one-year statute of limitations expired on March 22, 1994 and the suit filed on April 20, 1994 was beyond the statute.

D'Amore contends that the relationship did not end on March 22, 1993 since Monastra continued to perform legal services even after April 20, 1993, and his failure to promptly turn over material files prejudiced and delayed her discovery of the malpractice until July or August 1993. Therefore, she argues, the suit filed in April 1994 was within the one-year statute, thereby making her counterclaim timely. "In Ohio a counterclaim asserted by the defendant against the plaintiff, which relates to the same transaction or occurrence asserted in the original claim, relates back to the original commencement of the action." *Armstrong v. Harp Realty Co.* (1991), 73 Ohio App.3d 292, 294, 596 N.E.2d 1131, 1133.

In *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941, paragraph one of the syllabus, the Ohio Supreme Court held:

"[A] cause of action for legal malpractice accrues and the one-year statute of limitations commences to run either when the client discovers or, in the exercise of reasonable diligence should have discovered, the resulting damage or injury, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later."

The Supreme Court noted that "the question of when an attorney-client relationship for a particular undertaking or transaction has terminated is necessarily one of fact." *Id.* at 388, 528 N.E.2d at 944.

The Ohio Supreme Court in *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus, reaffirmed the *Omni–Food* holding and further refined the standard of determining when the statute of limitations on a legal malpractice claim begins to run. The court held:

"Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. (*Omni–Food & Fashion, Inc. v. Smith* [*supra* ], applied.)"

We find, in the circumstances of this case, that the date of the discharge letter from D'Amore to Monastra, dated March 22, 1993, is merely one facet of the termination of the attorney-client relationship. The letter may also be read to mean that the representation by Monastra did not terminate until he turned over

the essential files necessary to bring D'Amore's new counsel up to speed. Monastra's billing attached to his complaint provides evidence that he performed services for D'Amore by attending a pretrial on April 28, 1993 and conferring on June 15, 1993 with attorney Arnold regarding video tapes and discovery problems he had encountered. Further, Monastra made no motion to formally withdraw as counsel until April 28, 1993. The motion was granted by the court on May 7, 1993. Cuyahoga C.P.Loc.R. 10(B) provides:

"It is contemplated that counsel who has entered an appearance in the case shall remain in the case until it is concluded.

"However, upon written motion for leave to withdraw from the action and for good cause shown, the court may permit counsel to withdraw. In such case, counsel shall certify in the motion that the client and all other counsel of record have been notified."

Since the question of when an attorney-client relationship ends is a question of fact and since the evidence must be weighed most strongly in favor of D'Amore, a genuine issue of material fact remains regarding when the attorney-client relationship terminated. It could have occurred on March 22, May 7, or as late as June 15, 1993.

This court in *Okocha v. Fehrenbacher* (1995), 101 Ohio App.3d 309, 655 N.E.2d 744, was faced with a similar situation. In that case, the attorney argued that the legal malpractice claim against him was barred by the statute of limitations. The attorney claimed that the attorney-client relationship had terminated when the client fired him. The client, however, argued that the attorney continued to act as her attorney after he was fired. We held that summary judgment was properly denied as "[s]ummary judgment is not proper where a question of fact exists about when the attorney-client relationship terminated between the parties." *Id.* at 319, 655 N.E.2d at 750. See, also, *Mobberly v. Hendricks* (1994), 98 Ohio App.3d 839, 843, 649 N.E.2d 1247, 1249; *Landis v. Hunt* (1992), 80 Ohio App.3d 662, 671, 610 N.E.2d 554, 559–560; *Koch v. Gross* (1990), 64 Ohio App.3d 582, 585–586, 582 N.E.2d 51, 52–54.

In *Okocha* the client also similarly alleged that the statute of limitations did not run as she did not discover the facts indicating malpractice until much later, after the attorney-client relationship had terminated. This court held that the "discovery rule may extend the time for bringing the legal malpractice action" and that this further supported the trial court's decision to deny the attorney's motion for summary judgment.

In the case herein, D'Amore argues that the "cognizable event" triggering the running of the statute of limitations in this case did not occur until August 1993. That was when her new counsel finally received files from Monastra that revealed

the difficulties he had in handling the temporary alimony and the dramatic diminution in the marital estate.

Arnold's letters of March 25, 1994 and April 22, 1994 arguably pinpoint August 1993 as the "cognizable event" triggering D'Amore's discovery of her injuries. Before that time she did not know, and plainly her new lawyer was shocked to learn, of the injury suffered as a result of the diminished value of the ex-husband's business ventures. After Arnold's appearance in the case in April 1993, he requested D'Amore's file. Monastra did not furnish the file for over three months and when he did, it was incomplete and largely unorganized. Monastra's failure to provide complete files and his failure to provide a crucial analysis of D'Amore's husband's business ventures may have prevented discovery of the injury until the documents were obtained. As Arnold states in his correspondence of March 25, 1994 to D'Amore:

"In the initial file materials received from Mr. Monastra was an analysis of Mr. Melkon's business ventures by Bernard I. Agin under date of December 9, 1991 in which Agin concluded that the various business entities were worth approximately $443,711.00. Although Agin prepared a revision under date of August 18, 1992 in which he opined that the companies were then worth collectively $8,794.00, that report was not in the file submitted to us [by Monastra] and was obtained directly from Melkon's attorney in late 1993. Had we been aware at inception that Melkon was claiming such a drastic reverse in his business prospects, we might have taken a different approach to the handling of this claim."

D'Amore's deposition reveals discovery of the diminished value upon it being revealed to her by Arnold: "I knew it. I could see it just by looking at it. When I see something that's four something and then down to nine thousand you don't have to be a mathematical genius to know something's wrong there. $400,000.00 to $9,000.00." As this court in *Lynch v. Dial Finance Co. of Ohio No. 1, Inc.* (1995), 101 Ohio App.3d 742, 656 N.E.2d 714, held:

"[A]n injured person need not be aware of the full extent of the injury before there is a 'cognizable event' triggering the statute of limitations. 'Instead, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person' that a wrong has taken place." *Id.* at 747, 656 N.E.2d at 718, quoting *Zimmie, supra,* 43 Ohio St.3d at 58, 538 N.E.2d at 402.

Although Monastra argues that D'Amore was aware of the diminished value of the business accounts before the file was obtained, the record does not support this. D'Amore's deposition testimony regarding her knowledge of the value of the business accounts was in response to questions regarding her knowledge at the time of the divorce in February 1994. Although she may have suspected that

her husband was diminishing the accounts, she did not know that the diminution was due to her attorney's failure to act to stop the pillaging. Arnold's correspondence of March 25, 1994 shows that the later files indicated that as of August 18, 1992, Monastra knew that the various business entities had drastically diminished in value. However, a restraining order on the accounts was not filed until November 1992, despite any warnings D'Amore had related to him. Therefore, although she suspected that her husband was up to no good, she did not know that her attorney was not doing anything about it.

Arnold's correspondence of April 22, 1994 also details significant discoveries of injuries resulting from Monastra's failure in obtaining temporary alimony and failure to provide for maintenance to the marital home. Again, these injuries may not have been discoverable and may not reasonably have been discovered by D'Amore before the file was turned over to Arnold in late July or early August 1993.

In the instant case, viewing the evidence most favorably to D'Amore, we find that genuine issues of material fact remain regarding the determination of the date of the "cognizable event" and the termination of the attorney-client relationship as to preclude summary judgment in favor of Monastra on the statute of limitations issue. We intimate no opinion on the merits of this issue and leave it to the fact finder to resolve.

■ Even if at trial it is found that the statute of limitations has expired on D'Amore's legal malpractice counterclaim, her claim may be relevant as a defense to Monastra's claim for attorney fees and would not be barred as a recoupment or setoff. "A counterclaim reduces the amount due on the primary claim when the counterclaim is based upon defective workmanship or other defective performance by the plaintiff of the contract on which the liquidated claim is based." *L.A. Gross & Sons, Inc. v. Parisi* (1990), 66 Ohio App.3d 697, 700, 586 N.E.2d 142, 144. The Supreme Court of Ohio has held that "[a] claim of a defendant which would be barred by the statute of limitations if brought in an action for affirmative relief is available as a defense or under the common law theory of recoupment, when the claim arises out of the same transaction as the plaintiff's claim for relief, and when it is offered only to reduce the plaintiff's right to relief." *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 11 OBR 319, 463 N.E.2d 1246, paragraph one of the syllabus. See, also, *Drain v. DeFabio* (July 21, 1994), Cuyahoga App. No. 65937, unreported, at 5, 1994 WL 386013.

Recoupment, however, can only be had to the extent sufficient to satisfy the plaintiff's claim. *Riley* at 77, 11 OBR at 320–321, 463 N.E.2d at 1248–1249.

For the reasons stated above, we find that it was error to award Monastra and his law firm summary judgment on D'Amore's malpractice claims.

Assignment of Error I is sustained.

"II. The trial court erred when it denied the defendant's motion for extension of time to respond to the plaintiff's and third-party defendant's motion for summary judgment and the defendant's motion · to reconsider the motion for extension of time.

"III. The trial court erred when it denied the defendant's motion for extension of time to provide her expert's report on the plaintiff's legal malpractice claim and when it granted the defendant's counsel's motion to withdraw after defendant's counsel failed to timely respond to the motion for summary judgment.

"IV. The trial court erred when it ruled 'moot' (1) the defendant's motion to strike the plaintiff's untimely motion for summary judgment which had been filed without leave of court; and (2) the defendant's request for extension to respond to the plaintiff's motion for summary judgment and request for time to provide expert's reports on the issue of plaintiff's legal fees."

Given our disposition of Assignment of Error I reversing summary judgment on the counterclaim, we find these assignments of error are moot and it is unnecessary to address them. App.R. 12(A)(1)(c).

"V. The trial court erred when it granted plaintiff's motion for summary judgment on his claim for legal fees."

On June 9, 1995, Monastra filed his motion for summary judgment on his claim for legal fees. The motion was out of rule, filed without leave of court and was beyond the trial court's cut-off date for dispositive motions. The motion was based on D'Amore's failure to submit an expert report attacking the reasonableness of his fees. The motion was supported by Monastra's affidavit.

D'Amore's deposition, timely filed in the action, sets forth her dispute over Monastra's bills. She disagreed with everything about his billing, including entries in the bills that conflicted with the notations on her own calendar. Attached to her deposition was a list of dates detailing when she had called Monastra and when he did and did not return her calls. Her list also specified when hearings were held. The dates on her list conflicted with the entries on Monastra's itemized bill, and she also disagreed with time that he said he had spent. She denied the accuracy of his itemization. A comparison between D'Amore's list and Monastra's itemization shows that twenty of his listed conferences with D'Amore do not appear on her list. Also, four alleged pretrials itemized on Monastra's bill do not appear on D'Amore's list, or on the court docket.

■ Although expert testimony is ordinarily required to challenge reasonableness of attorney fees, that is not an absolute requirement when a layperson can understand the issues. *Ramage v. Cent. Ohio Emergency Serv.* (1992), 64 Ohio St.3d 97, 103, 592 N.E.2d 828, 833–834; *Schaffter v. Ward* (1985), 17 Ohio St.3d 79, 83, 17 OBR 203, 206, 477 N.E.2d 1116, 1119; *Northwestern Life Ins. Co. v. Rogers* (1989), 61 Ohio App.3d 506, 512, 573 N.E.2d 159, 447–448. Here, an issue of fact existed regarding the reasonableness of the fees based on D'Amore's deposition testimony that there were discrepancies between her personal list and Monastra's itemized bill. Expert testimony would not be needed as a layperson could understand that the bill does not match D'Amore's list of services. Furthermore, even if D'Amore did need to obtain an expert opinion, the trial court abused its discretion in not permitting her the extra time to obtain one even though she had recently obtained new counsel and Monastra had filed the motion for summary judgment without leave.

■ Weighing the evidence in a light most favorable to D'Amore, we find that summary judgment on the fees issue should not have been granted. The trial court granted D'Amore's counsel leave to withdraw on June 28, 1995. When coupled with the trial court's denial of her request for time to respond and to furnish an expert's report, we find that the trial court erred by not adequately providing D'Amore an opportunity to respond. When she was left defenseless by her original counsel's desertion, the court should have given new counsel an opportunity to dispute the billings. The ruling comes close to summary judgment by default, a practice which should be discouraged. "Default" summary judgments are not permitted under Ohio law. *Maust v. Palmer* (1994), 94 Ohio App.3d 764, 769, 641 N.E.2d 818, 821–822; *Wooten v. Columbus Div. of Water* (1993), 91 Ohio App.3d 326, 331, 632 N.E.2d 605, 608. It is a basic tenet of Ohio jurisprudence that cases should be "decided on their merits, not upon pleading deficiencies." *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 269, 297 N.E.2d 113, 121–122. See, also, *Perotti v. Ferguson* (1983), 7 Ohio St.3d 1, 3, 7 OBR 256, 257, 454 N.E.2d 951, 952–953; *Hopkins v. Quality Chevrolet* (1992), 79 Ohio App.3d 578, 583, 607 N.E.2d 914, 917–918.

Assignment of Error V is sustained.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SPELLACY, C.J., and PATRICIA A. BLACKMON, J., concur.