OPINION
Alfred Lewis is appealing the sentences imposed upon him by the Dayton Municipal Court following his pleas of guilty to one count of aggravated menacing, one count of telephone harassment, and two counts of criminal damaging.
The events leading to his convictions occurred on November 26, 2000, when he allegedly committed one count of assault, two counts of aggravated menacing, three counts of criminal damaging and one count of telephone harassment against four complaining witnesses. After pleading not guilty at his arraignment on December 4, 2000, Lewis's trial was set for December 15, 2000. Dayton Municipal Court Acting Judge Michael Thompson presided over the trial on that date and heard the testimony. Just prior to trial, the prosecutor dismissed the aggravated menacing count committed against Jasmine Alves.
Jasmine testified that Lewis scratched her face, neck, and back as he tried to pull her from her automobile during the early morning hours of November 26, 2000. Eyewitness Elroy Facey corroborated Jasmine's testimony. Cheryl Alves, Jasmine's mother, testified that Lewis telephoned her home twice at approximately 4 a.m. on November 26, 2000. Shortly thereafter, Cheryl heard a crash, saw that her cement planter had been thrown through her daughter Jocelyn's car window, and she noticed Lewis standing nearby. Lewis then threw a rock and shattered her living room window. At some point, Lewis stood at the corner of Cheryl's garage, facing her kitchen window, with what looked like a gun in one hand and a rock in the other, stating "Jasmine, come out. I will kill everybody up in that house." Cheryl watched as Lewis threw another brick at the living room window.
The remainder of the trial was continued until December 27, 2000. At that hearing, a plea bargain was reached and Judge Thompson accepted Lewis's guilty pleas to one count of telephone harassment, one count of aggravated menacing, and two counts of criminal damaging. Judge Thompson referred the case for a pre-sentence investigation and set the case for sentencing before Judge Bill C. Littlejohn. At that time, Lewis's attorney expressed his concerns that Judge Littlejohn had been friends with the victim's family.
A scheduling error prevented Judge Littlejohn from sentencing Lewis on January 3, 2001, but John R. Smith, Cheryl Alves' father, was permitted to make a victim impact statement. At the conclusion of Smith's statement, Judge Littlejohn stated that he had been familiar with Smith and his reputation in the community, but that this knowledge would not influence his decision.
On January 9, 2001, Lewis filed a motion to recuse Judge Littlejohn. The motion was heard at a hearing on the same day. Lewis argued that there had been an "appearance of impropriety" based upon Judge Littlejohn's familiarity with the victim's family. Additionally, because Judge Thompson heard part of the trial and took Lewis's plea, Lewis contended that Judge Thompson should have been the one to sentence Lewis under Crim.R. 25. Judge Littlejohn overruled the motion, stating that his connections and involvement in the community had resulted in his having been familiar with fifty percent of the people in his courtroom, but such familiarity had not influenced his decisions. Additionally, he stated that Crim.R. 25 applied to trials, not to a plea. Lewis was sentenced to 180 days on the aggravated menacing charge and 90 days on each of the criminal damaging charges, with the sentences to run consecutively. Lewis was also sentenced to 180 days on the telephone harassment charge, however this sentence was suspended on the condition that he commit no further criminal violations. Lewis was given credit for the time he had already spent incarcerated.
Lewis now appeals the trial court's sentencing, asserting one assignment of error.
 I.
The trial court judge erred by presiding over and determining the sentence of defendant when he was familiar with the complainants, and was not the judge that presided over the trial and eventual plea.
Lewis argues that his rights were violated when his motion to recuse was overruled based upon the trial court's interpretation of Crim.R. 25(B).
Preliminarily, we note that the proper procedure for seeking disqualification of a municipal court judge is set forth in R.C. 2701.031
(formerly R.C. 2973.20) which states, in pertinent part:
 (A) If a judge of a municipal or county court allegedly is interested in a proceeding pending before the judge, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the judge or to a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the judge, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the court in which the proceeding is pending.
 (B) An affidavit of disqualification shall be filed under this section with the clerk of the court in which the proceeding is pending not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled [.]
We find that the documents which Lewis filed in the Dayton Municipal Court alleging a conflict of interest do not meet the requirements of the procedure set forth in R.C. 2701.031 to disqualify a municipal court judge. At the December 29, 2000 hearing, Lewis expressed his concerns that Judge Littlejohn could not be impartial. Judge Littlejohn addressed his familiarity with the victim's family during the January 3, 2001 hearing, but explained that such would not influence his decision, as he had often been familiar with people who had entered his courtroom. These issues were addressed during the January 9, 2001 hearing whereby Lewis's motion for recusal was heard and overruled. When filing the motion to recuse, Lewis could have easily complied with the guidelines of the statute and filed an affidavit with the clerk of courts not less than seven days prior to the January 9, 2001 hearing. No such affidavit was filed, and we can see no reason for such failure.
Albeit for different reasons than stated by the trial court, we would disagree with Lewis's allegations that the trial court violated his rights by overruling his motion. Lewis first argues that his due process rights were violated by Judge Littlejohn's failure to recuse himself. Lewis asserts that because Judge Littlejohn did not hear the evidence in this case, and because he admitted to having been familiar with the complainants in the case, Judge Littlejohn's failure to recuse himself was not "fair" to Lewis and it amounted to more than an appearance of impropriety.
Lewis bases this contention on Judge Littlejohn's statements during the January 3 and 9, 2001 hearings, when he admitted to knowing the complainant and being aware of Smith's reputation in the community. At the January 3, 2001 hearing, Judge Littlejohn stated:
 THE COURT: Mr. Cicero, I do know Mr. Smith. I know his reputation in the community. He has a fine reputation.
 That has nothing to do with my job, however. I know, perhaps, fifty percent of the people that come in this courtroom, based upon my activities in the community. The record should reflect that.
(January 3, 2001 Tr. 6.) Similarly, the topic was addressed by Judge Littlejohn at the January 9, 2001 hearing:
 THE COURT: *** As far as it relates to recusing myself — based on being a Daytonian with elementary school, working in the Public Defender's Office, the Prosecutor's Office, hearing traffic court, and being a Judge for ten years, Priority Board for nine years — as chairman of that — and all of the community organizations I have served in, I know a lot of people.
 I have had people here, saying they are distant relatives and et cetera. If they were deserving of going to jail, we sent them to jail.
(January 9, 2001 Tr. 9-10.)
As we stated in In re McCormick (Jan. 7, 2000), Clark App. Nos. 98 CA 47, 98 CA 48, unreported:
 "[A] trial judge is presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity." Okocha v. Fehrenbacher (1995), 101 Ohio App.3d 309, 322, citing State v. Wagner (1992), 80 Ohio App.3d 88, 93.
 "The existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party." Okocha, 101 Ohio App.3d at 322, citing In re Adoption of Reams (1989), 52 Ohio App.3d 52, 59.
In this case, we do not find that Lewis's examples manifest bias or prejudice on behalf of Judge Littlejohn. Instead, these examples attest to Judge Littlejohn's ability to be familiar with people in his courtroom, yet remain fair by making rational decisions based upon the facts and the law in his cases. For those reasons, we find Lewis's argument to be unpersuasive.
Lewis also contends that the trial court erred in its determination that Crim.R. 25(B) did not apply to this case because there was a plea and not a trial.
Crim.R. 25(B), governing the disability of a judge at sentencing, provides:
 If for any reason the judge before whom the defendant has been tried is unable to perform the duties of the court after a verdict or finding of guilt, another judge designated by the administrative judge, or, in the case of a single-judge division, by the Chief Justice of the Supreme Court of Ohio, may perform those duties. If such other judge is satisfied that he cannot perform those duties because he did not preside at the trial, he may in his discretion grant a new trial.
In terms of the application of Crim.R. 25(B) to plea bargains as opposed to trials, we find Ohio case law exists in which courts have applied Crim.R. 25(B) in situations where a defendant has pled to a crime and a different judge has completed the sentencing. See State v. Pecina (1992), 76 Ohio App.3d 775; State v. Blythewood (1978), 60 Ohio App.2d 300, 14 O.O.3d 262. In these cases, the courts analyzed Crim.R. 25(B) despite the defendants having pled to the crimes. Based upon these cases, we disagree with the trial court's decision that Crim.R. 25(B) does not apply to pleas.
Lewis further argues that Crim.R. 25(B) requires Acting Judge Thompson to sentence him, and that it was "unfair" for Judge Littlejohn to have sentenced him. The State asserts that this interpretation of Crim.R. 25(B) is "impractical." The State proposes that this situation is similar to that in State v. Shine (Dec. 1, 1988), Montgomery App. No. 11092, unreported, where we stated the following:
 Defense counsel argues that "there is nothing in the record to indicate that the judge who tried the case was unable to do the sentencing." We disagree. The fact that an Acting Judge was appointed to the single-judge trial court indicates that some reason existed for Judge Lowman's inability to sentence appellant. What is absent from the record is the particular reason for Judge Lowman's absence. Because the language of Crim.R. 25(B) does not enumerate specific instances wherein a substitution of judges might be proper, (e.g. death, illness), and the record does not contain any indication that Judge Lowman's absence was for frivolous purposes, we cannot say that the substitution of Judge Messham was improper. "In appeals . . . all reasonable presumptions consistent with the record will be indulged in favor of the validity of the judgment or decision under review. . . ." (Citations omitted.) It is the State's contention that this presumption of regularity should also apply to the reverse situation where, as here, there are no reasons indicated in the record for the substitution of Judge Littlejohn for the sentencing when Acting Judge Thompson had originally handled the case. We disagree.
Under Crim.R. 25(B), the judge who presided at a criminal trial, or a plea as in this case, must sentence the defendant unless unable to do so. Beatty v. Alston (1975), 43 Ohio St.2d 126, 127; State v. Green (1997),122 Ohio App.3d 566. There was no finding, nor any indication in the record, as to why Acting Judge Thompson was unable to perform sentencing. As such, we remand this case for Acting Judge Thompson to sentence Lewis, or in the alternative, for a determination as to why Acting Judge Thompson is unavailable to sentence Lewis.
Accordingly, Lewis's assignment of error is sustained.
The judgment of the trial court is reversed and remanded.
WOLFF, P.J. and FAIN, J., concur.