LANDIS et al., Appellants,

v.

HUNT et al., Appellees.

[Cite as *Landis v. Hunt* (1992), 80 Ohio App.3d 662.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1337.

Decided July 7, 1992.

663

664

*John B. Huber,* for appellants.

*John C. Nemeth & Assoc., John C. Nemeth* and *David A. Caborn,* for appellees William J. Ahern and William J. Ahern & Associates, L.P.A.

*Young & Alexander Co., L.P.A., John A. Smalley* and *D.K. Wehner,* for appellees Richard M. Hunt and Richard M. Hunt Co., L.P.A.

*Lane, Alton & Horst* and *Theodore M. Munsell,* for appellee Robert C. Herkins.

JOHN C. YOUNG, Presiding Judge.

This matter is before this court upon the appeal of Deborah Landis et al., appellants, from a judgment in favor of Richard M. Hunt et al., appellees. The underlying facts are as follows: In March 1981, a pathology report was sent to Tom Landis's family physician, Dr. Young, indicating that a mole that had been removed from his right thigh was not malignant. After experiencing various discomforts, Tom Landis made an appointment to be examined by a specialist in dermatology. In January 1982, the March 1981 slide of Tom Landis's tissue was reexamined and it was determined that the slide had been misread and that Landis had been misdiagnosed. The mole was malignant and Landis underwent surgery in February 1982 for the removal of cancer which had developed and spread into his groin area. In April 1982, revision surgery was necessary and part of Landis's hip bone was removed.

In May 1982, fourteen months after the lab had misread Tom Landis's slide, the Landises consulted attorney Richard Hunt regarding Tom's misdiagnosis. Since Hunt did not handle medical malpractice cases, he told the Landises he would consult with attorney William Ahern. Hunt stated that he consulted with Ahern by telephone, and, after relating a skeletal version of the facts, was told by Ahern that the one-year statute of limitations, which was

applicable at the time, was a complete defense to any medical malpractice claims of the Landises.

Ahern states that it was his practice to establish a file with notes of the initial conversation with his clients. Ahern has since closed his law office but a search of his records showed no reference to any file, card, or notes related to the Landises' case. Ahern acknowledges that he and Hunt had a referral arrangement throughout the 1980s. However, Ahern had no knowledge of a client-attorney relationship or a referral to him of the Landis case from Hunt.

Hunt stated that he sent a letter to the Landises in June 1982 which included his advice that their medical malpractice claim would be defeated by the applicable statute of limitations. The letter also included his advice of seeking a second opinion from another attorney. Mrs. Landis indicated that she never received this letter.

In April 1983, the Landises again consulted with Hunt. After consulting with Ahern a second time, Hunt stated, he told the Landises that the law had not changed and that their claims were time-barred.

In 1984, prior to Tom Landis's death, the Landises consulted with Attorney Robert Herkins about minimizing Tom's estate in light of his terminal condition. Herkins reviewed the Landises' assets and prepared a quitclaim deed so that the house would be solely in the name of Deborah Landis at the time of Tom's death. Herkins had previously done legal work for the Landises in 1974, when he drafted their wills, and in 1978, when he represented them in a real estate transaction.

Tom Landis died on April 10, 1984. Deborah Landis retained Herkins to probate her husband's estate. In October 1989, Deborah Landis was watching a television program dealing with malpractice claims. She consulted an attorney and in May 1990, she filed this legal malpractice claim against appellees Hunt and Ahern on behalf of herself, her husband's estate, and on the behalf of her children. Subsequently, appellant amended her complaint to include Herkins as a codefendant.

Because of the complexity of the issues in this case, which involves three separate claims of legal malpractice based upon underlying medical malpractice claims, the trial court bifurcated the issues such that only the legal malpractice claims are before this court. The appellees do not dispute the fact that medical negligence occurred.

Hunt filed a motion for summary judgment asserting that the action was time-barred, that an attorney-client relationship did not exist, that he met the standard of care of his profession, and that the wrongful death action did not exist at the time he had been consulted by the Landises. The trial court

granted his motion on the bases that an attorney-client relationship did not exist and that if an attorney-client relationship did exist, the Landises' claims for legal malpractice were barred by the statute of limitations.

Ahern also filed a motion for summary judgment, which was granted by the court. The trial court found that no attorney-client relationship existed between Ahern and the Landises on the basis of privity of contract, or as a result of vicarious liability based on their consultation with Hunt. Likewise, the trial court granted Herkins's motion for summary judgment. The trial court indicated in its decision that Herkins owed no legal duty to appellants and that appellants had failed to meet their burden on the issue of standard of care. Furthermore, the trial court stated that even if Herkins owed a duty to appellants, their claims were barred by the statute of limitations.

Appellants have instituted this appeal and now assert the following eight assignments of error:

"First Assignment of Error:

"The trial court erred in granting summary judgment as to defendant Hunt, holding that an attorney-client relationship did not exist between defendant Hunt and plaintiffs.

"Second Assignment of Error:

"The trial court erred in holding that plaintiffs' claim for legal malpractice against defendant Hunt is barred by the statute of limitations.

"Third Assignment of Error:

"The trial court erred in granting summary judgment as to defendant Ahern, holding that no attorney-client relationship existed between plaintiffs and defendant Ahern.

"Fourth Assignment of Error:

"The trial court misapplied the rule of privity, failing to take account of defendant Ahern's duty to render reasonable advice owed to plaintiffs as third-party beneficiaries of the relationship between defendants Hunt and Ahern.

"Fifth Assignment of Error:

"The trial court erred in holding that in the absence of an attorney-client relationship, defendant Ahern was not vicariously liable as a partner of Hunt or as a joint venturer.

"Sixth Assignment of Error:

"The trial court erred in granting summary judgment in favor of defendant Herkins, finding that defendant Herkins owed no legal duty to plaintiffs.

"Seventh Assignment of Error:

"The trial court erred in holding that plaintiffs' claim against defendant Herkins is barred by the statute of limitations.

"Eighth Assignment of Error:

"The trial court erred in holding that plaintiffs failed to meet their burden of the issue of standard of care against defendant Herkins."

In their first assignment of error, appellants assert that the trial court erred in granting summary judgment to Hunt, and in concluding that, as a matter of law, an attorney-client relationship did not exist between Hunt and the Landises.

■■■ Summary judgment, Civ.R. 56, is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving all doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only a conclusion adverse to the parties opposing the motion. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615.

Pursuant to Civ.R. 56(C), summary judgment may be rendered where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment may not be rendered unless it appears that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made.

The moving party has the burden of showing that there is no genuine issue as to material fact as to the critical issues. The opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56(C) to show a genuine issue for trial. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

■■■ The elements which constitute a legal malpractice action are as follows: (1) an attorney-client relationship; (2) sufficient facts to show that the attorney's alleged misconduct caused the plaintiff's injury; (3) the attorney breached his duty to provide competent legal services; and (4) the damages which the plaintiff sustained were the proximate result of the attorney's alleged misconduct. *Jablonski v. Higgins* (1983), 6 Ohio Misc.2d 8, 6 OBR 548, 453 N.E.2d 1296. Significant to the case is whether an attorney-client relationship existed between the Landises and Hunt. The appellants in this case not only have the burden of proving that an attorney-client relationship existed, but also must establish by expert testimony that Hunt fell below the standard of care ordinarily exercised by members of the legal profession under similar circumstances.

■ The practice of law includes the representation of a client in court proceedings, advice to clients, and any action in a client's behalf that is connected with the law. Although the payment of a fee is not an essential element of the practice of law, an attorney-client relationship exists when an attorney advises others as to their legal rights, a method to be pursued, the forum to be selected, and the practice to be followed for the enforcement of their rights. See *In re Unauthorized Practice of Law in Cuyahoga Cty.* (1963), 175 Ohio St. 149, 23 O.O.2d 445, 192 N.E.2d 54. An essential element as to whether an attorney-client relationship has been formed is the determination that the relationship invoked such trust and confidence in the attorney that the communication became privileged and, thus, the information exchanged was so confidential as to invoke an attorney-client privilege. See, also, R.C. 2317.021.

The record indicates that the Landises initiated a meeting with Hunt in May 1982 for the purpose of defining their legal rights arising from the misdiagnosis of Tom Landis's cancer. Although Hunt informed the Landises that he did not handle medical malpractice cases, he told them he would confer with an attorney in Columbus and get back to them. He told them that he thought their claims were barred by a one-year statute of limitations. During this initial consultation, the Landises never signed a contract, were never charged a fee, and never signed any authorization form agreeing to Hunt's representation of this matter. Hunt had a file on the Landises, but the file contained limited information. Hunt stated that once he conferred with the Columbus attorney, he telephoned the Landises and sent them a follow-up letter indicating that the one-year statute of limitations was a complete defense to an action against Dille Laboratory. The June 10, 1982 letter had the wrong address and Deborah Landis stated that she never received it.

Approximately a year later, in April 1983, the Landises again arranged a meeting with Hunt in his office. Tom had had some surgery since their last meeting with Hunt and wanted to pursue a malpractice case because of their high medical expenses. Hunt stated that he again called attorney Ahern, and that Ahern told him there was no legal way to circumvent the one-year statute of limitations.

■ Although no fee arrangement was discussed, or money exchanged, it is apparent that Hunt's initial consultation with the Landises in May 1982 constituted an attorney-client relationship. The Landises' single purpose for consulting with Hunt was to pursue their legal rights which arose from the misdiagnosis of Tom Landis's cancer. Although Hunt claims that he told the Landises he did not represent clients in medical malpractice claims, he, nonetheless, rendered legal advice based on the facts the Landises had given

him. Moreover, the Landises relied upon his legal advice in not pursuing any claims arising from the medical misdiagnosis of Tom Landis's cancer. The relationship created between Hunt and the Landises was based upon a confidential communication which invoked the attorney-client privilege. Accordingly, the trial court improperly held that an attorney-client relationship did not exist between Hunt and the Landises. Appellants' first assignment of error is well taken and is sustained.

In their second assignment of error, appellants assert that the trial court erred in holding that appellants' claims for legal malpractice against Hunt were barred by the statute of limitations. Pursuant to R.C. 2305.11(A), a cause of action for legal malpractice accrues and the one-year statute of limitations begins to run when the client discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury. *Skidmore & Hall v. Rottman* (1983), 5 Ohio St.3d 210, 5 OBR 453, 450 N.E.2d 684.

As established in this court's disposition of appellants' first assignment of error, an attorney-client relationship existed between the Landises and appellee Hunt in May 1982 and again in April 1983, when the relationship terminated. It is Deborah Landis's contention that she discovered the legal malpractice in October 1989 while watching a television program that mentioned there was a two-year statute of limitations for medical malpractice actions. Since she had been told by Hunt in 1982 and again in 1983 that a one-year statute of limitations for medical malpractice claims was in effect in Ohio, and did not realize that each state is different, she consulted a lawyer. She filed the action herein on May 29, 1990.

It is important to note that the development of the law relative to legal malpractice has paralleled the developing law relative to medical malpractice, although this court is mindful that each is separate. In 1983, the Ohio Supreme Court rejected the termination rule and adopted the discovery rule in medical malpractice cases. *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438. Approximately a month later, the Supreme Court extended the discovery rule to legal malpractice actions. *Skidmore, supra.*

In *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 133, 538 N.E.2d 93, 95, the Supreme Court held:

"Admittedly, 'extent and seriousness' are not terms of art and, therefore, do not lend themselves to easily discernible definitions. Since the three prongs of *Hershberger* overlap considerably, we believe that the best manner in which to explain 'extent and seriousness of his condition' is to combine the

three prongs. Thus, we now hold that the 'extent and seriousness of his condition' language of the test set forth in *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, paragraph one of the syllabus, requires that there be an occurrence of a 'cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies."

The Sixth District Court of Appeals relied upon this holding in *Shadler v. Purdy* (1989), 64 Ohio App.3d 98, 103, 580 N.E.2d 822, 826, when it reversed and remanded a trial court's summary judgment on the basis that:

" * * * [C]onstruing these facts most strongly in favor of appellant, this court cannot find that reasonable minds could only conclude that the cognizable event which did or should have put Shadler on notice of the need to pursue his possible remedies took place in May 1984. Accordingly, we find that the trial court erred in granting appellee's motion for partial summary judgment * * *."

When considering that the developing law in the legal malpractice area has closely paralleled the emerging law in medical malpractice cases, this court is inclined to apply the test of a "cognizable event" to the facts before it. Thus, in doing so, reasonable minds could come to different conclusions as to the "cognizable event" which did or should have put Deborah Landis on notice of the need to pursue her legal malpractice claim against Hunt. It is important to interject at this point that this court is not evaluating the merits of the alleged legal malpractice claim against Hunt. It is this court's conclusion only that an issue of fact exists as to the "cognizable event" which did or should have placed Deborah Landis on notice of any potential legal malpractice claims she may have had against Hunt. The trial court did not state specifically when an action for legal malpractice accrued because the trial court improperly held that an attorney-client relationship did not exist. Thus, on remand, a genuine issue of fact exists as to the accrual date of any potential legal malpractice claim Deborah Landis may have against Hunt.[1] Moreover, a genuine issue of fact exists as to whether Deborah Landis has a legal malpractice claim against Hunt, assuming that the statute of limitations is not an issue. Accordingly, appellants' second assignment of error is well taken and is sustained.

---

1. The trial court must also explore the issue as to whether the one-year statute of limitations imposed upon medical malpractice claims was applicable only to doctors or was also applicable in an action against Dille Laboratory, the place where the Landises' physician sent the slide for evaluation.

■ In their third assignment of error, appellants assert that the trial court erred in holding that no attorney-client relationship existed between the Landises and Ahern. In construing the facts most favorably to the Landises and in light of this court's discussion of appellants' first assignment of error, the trial court properly found that an attorney-client relationship did not exist between the Landises and Ahern. From the facts presented, it is inconceivable that a communication took place between the Landises and Ahern which would have invoked the attorney-client privilege.

The facts demonstrate that Hunt conferred with Ahern about the Landises' predicament on one narrow issue—whether the statute of limitations barred their medical malpractice claim. The evidence does not show that any other issues or viable claims were explored. Although Hunt conferred with Ahern on this one issue, he did not refer the case to Ahern to explore any other claims or any possible derivative claims. The Landises may have been aware that Hunt was conferring with a Columbus attorney about their case, but that was the extent of their involvement with Ahern. Hunt stated that he made two phone calls to Ahern, one in 1982 and one in 1983, regarding the statute of limitations problem in the Landis case. Hunt also testified that when he referred a case to Ahern, it was customary for Ahern to meet with the referred clients in Hunt's office in Dayton, Ohio. Moreover, it was Ahern's contention that he had no file, no notes, and no recorded or unrecorded recollection of the Landises' malpractice case. Since there are no facts which would establish that a communication took place between the Landises or their representative, and Ahern, which was so confidential as to invoke an attorney-client privilege, an attorney-client relationship did not come into existence between the Landises and Ahern. Accordingly, appellants' third assignment of error is not well taken and is overruled.

■ In their fourth assignment of error, appellants assert that Ahern had a duty to render reasonable advice since they were the third-party beneficiaries of the relationship between Hunt and Ahern. Since the first element of a legal malpractice action is the existence of an attorney-client relationship, Ahern had no duty to the Landises, since this court determined in appellants' third assignment of error that an attorney-client relationship did not exist between the Landises and Ahern. Accordingly, appellants' fourth assignment of error is not well taken and is overruled.

■ In their fifth assignment of error, appellants assert that in the absence of an attorney-client relationship, Ahern was vicariously liable to them as a partner of Hunt or as a joint venturer. The predicate of appellants' claims against Ahern is that through communication with Hunt, Ahern rendered the wrong legal advice to the Landises. Since a claim in legal

malpractice is grounded on the existence of an attorney-client relationship, and this court has determined that no attorney-client relationship existed between Ahern and the Landises, no claim exists against Ahern. Furthermore, there is no evidence to support appellants' contention that Hunt and Ahern were either partners or joint-venturers. The Landises were seeking legal advice and potential legal representation to pursue their medical malpractice claims. Any representation of such claims would involve an attorney-client relationship and would not be characterized by terms that are more commonly used to describe a business relationship or business transaction. Accordingly, appellants' fifth assignment of error is not well taken and is overruled.

In their sixth assignment of error, appellants assert that the trial court erred in granting summary judgment in favor of Herkins since Herkins owed no legal duty to the Landises. In the related eighth assignment of error, appellants assert that the trial court erred in determining that the appellants failed to meet the burden on the issue of the standard of care. These two assignments of error will be discussed together.

The facts show that, after the Landises learned of Tom's terminal prognosis, they consulted Herkins in 1984 for the purpose of minimizing Tom's estate. Herkins evaluated the Landises' financial situation and prepared a quitclaim deed so that the marital house would be solely in Deborah Landis's name. After Tom's death in April 1984, Deborah Landis employed Herkins for the purpose of probating her husband's estate. It is evident from Deborah Landis's deposition testimony that the circumstances leading up to her husband's untimely death were never discussed with Herkins. Likewise, Herkins's deposition testimony corroborates the fact that he and Deborah Landis never discussed the circumstances of Tom's death, except for the fact that Tom's death was caused by terminal cancer.

Appellants' expert, Wiley Dinsmore, testified that Herkins not only breached a duty to Deborah Landis but also fell below the standard of care of probate attorneys in similar circumstances. However, Dinsmore admittedly never reviewed Deborah Landis's deposition and was unaware of any information that transpired between Deborah Landis and Herkins. Thus, this court must deduce that it is Dinsmore's contention that an attorney probating an estate owes a duty to his or her client to make inquiries into a potential wrongful death claim in each instance. Appellants have not provided any statutory or case law which imposes a duty upon probate attorneys to inquire in each instance as to whether the circumstances of a decedent's death would give rise to a wrongful death claim. Thus, it is this court's determination that no such duty exists without something being said by the client which would

cause the probate attorney to make further inquiry into the circumstances of a decedent's death to explore the possibility of a wrongful death claim.

Likewise, appellants have failed to establish that Herkins fell below the standard of care of a probate attorney under similar circumstances. Without a duty to initiate questioning to determine whether the decedent was a victim of a wrongful death, appellants have not demonstrated, for purposes of summary judgment, that Herkins's conduct was below the standard of care employed by probate attorneys under similar circumstances. Herkins, like Dinsmore, uses a mental checklist when interviewing his clients regarding probate matters. This mental checklist is keyed to Ohio and federal estate tax returns and there is no specific inquiry for possible wrongful death or survivorship claims.

Although the Landises consulted Herkins in 1974 to have their wills drafted, in 1978 for representation at a real estate closing, and in 1984 for estate and probate matters, they did not consult with Herkins, but rather another lawyer, in 1982 and 1983 regarding their rights in a claim for medical malpractice. Thus, Herkins was never associated with the Landises at any time during their pursuit of a medical malpractice claim.

Accordingly, appellants' sixth and eighth assignments of error are not well taken and are overruled.

In their seventh assignment of error, appellants assert that the trial court erred in holding that appellants' claim was barred by the statute of limitations. In light of this court's disposition of appellants' sixth and eighth assignments of error, appellants had no claim against Herkins. Accordingly, appellants' seventh assignment of error is not well taken and is overruled.

Based on the foregoing, appellants' first and second assignments of error are well taken and are sustained. Appellants' third, fourth, fifth, sixth, seventh and eighth assignments of error are not well taken and are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed as to appellees Ahern and Herkins and reversed as to appellee Hunt.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PEGGY BRYANT and DESHLER, JJ., concur.