Andrew **HAMRICK, et al., Plaintiffs,**

v.

**UNION TOWNSHIP, OHIO, et al., Defendants.**

**No. C–1–98–161.**

United States District Court, S.D. Ohio, Western Division.

Dec. 22, 1999.

Jeffery Stephen Schwartz, Rosenhoffer, Nichols & Schwartz, Batavia, OH, for plaintiffs.

Michael Edward Maundrell, Schroeder Maundrell Barbiere & Powers, Cincinnati, OH, for defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants' Motion to Disqualify Counsel for Plaintiffs (doc. 29); Plaintiffs' Response (doc. 34); and Defendants' Reply (doc. 39).

## BACKGROUND

On February 27, 1998, Plaintiffs Andrew Hamrick, Bruce Keaton, Deborah Lovins–Vance, and Melissa Ross (hereinafter, collectively referred to as "Plaintiffs") filed suit against Defendants Union Township, Michael Burns, Michael McMillan, Kenneth Geis, and Charles Knox (hereinafter, collectively referred to as "Defendants") (doc. 1). The Parties do not dispute the fact that at all relevant times herein, all of the Parties to this action were employed in

some capacity by the police department of Defendant Union Township.

The Complaint sets forth ten causes of action, most of which are asserted against all Defendants and include allegations of Plaintiffs civil rights violations, sexual harassment, sexual discrimination, and retaliatory discharge (*Id.*). The tenth cause of action specifically alleges a claim of intentional infliction of emotional distress on behalf of Plaintiffs Hamrick, Keaton, and Lovins–Vance against Defendant McMillan (*Id.*). In fact, Defendant McMillan is the person at the center of Plaintiffs' Complaint as well as Defendants' Motion to Disqualify Plaintiffs' Counsel, Gustavson, Lewis & Jones Co., L.P.A. (hereinafter, "Plaintiffs' Motion to Disqualify").

Sometime between 1989 and 1997, Gary R. Lewis, Plaintiffs' present counsel of record, was continuously employed as an attorney and/or shareholder at the law firm of Kimpel, Hyland, Weinkam & Goodson (hereinafter, "KHW & G") (doc. 34). Donald T. Jones[1] was also continuously employed as an attorney of KHW & G from 1989 to 1997 (*Id.*). After January 1, 1998, Mr. Lewis and Mr. Jones became shareholders of a new firm named Gustavson, Lewis & Jones Co., L.P.A. (hereinafter, "GL & J") (*Id.*).

In September of 1995, Defendant McMillan alleges that he telephoned Mr. Jones on one or two occasions concerning the possibility of legally representing him in relation to accusations of sexual harassment made by Brenda Morgan Frost, a police officer employed at the time by Defendant Union Township and not a party herein. (doc. 29). This conversation or conversations[2] concerned an investigation of criminal conduct allegedly instigated by Ms. Frost against Defendant McMillan (*Id.*). The investigation concerned, in part, allegations of unwanted sexual harassment made by Ms. Frost and the

subsequent harassment by Defendant McMillan of Plaintiff Keaton and others in the police department (*Id.*). Defendants contend that the charges of sexual harassment made by Ms. Frost against Defendant McMillan are a vital component part of Plaintiffs' broader allegations against all Defendants.

Defendant McMillan asserts that, in September of 1995, he sought legal representation from Mr. Jones and KHW & G due to his concern that Ms. Frost and Plaintiffs would be a continuing threat to his employment at the police department (*Id.*). It is undisputed by the Parties that the named partners in Mr. Jones's current firm of Gustavson, Lewis & Jones were all members or associates of the firm of Kimpel, Hyland, Weinkam & Goodson at the time in question. During their telephone conversation, Defendant McMillan contends that he spent a total of 2.5 hours explaining to Mr. Jones about the background, facts, and his personal observations surrounding the present action as well as the criminal investigation that preceded it (*Id.*).

Defendants attached to their Motion to Disqualify the affidavits of Defendant McMillan's wife, Kimberly McMillan, and his friend, Terry Zinser, who confirmed that they were present when Defendant McMillan telephoned Mr. Jones in September of 1995 for the purpose of obtaining legal advice regarding the facts set forth above. (doc. 29, Exs. B & C).

The affidavits of Defendant McMillan, Mrs. McMillan and Mr. Zinser also collectively state that: (1) Defendant McMillan sought representation from Mr. Jones in connection with the same allegations that are now set forth in Plaintiffs' Complaint; (2) KHW & G, through Mr. Jones, agreed to represent Defendant McMillan in connection with these allegations; and (3)

---

1. Mr. Jones is not personally involved in this litigation at this time.

2. Mr. Jones states in his attached affidavit that he could recall having only one brief telephone conversation with Defendant

McMillan in relation to an employment problem of some kind, sometime before December 31, 1997 (doc. 34, Ex. 1). It is important to note that, as of January 1, 1998, KHW & G became the new law firm of GL & J.

KHW & G, through Mr. Jones, provided legal advice to Defendant McMillan in connection with the same allegations that are now set forth in Plaintiffs' Complaint (*Id.,* Exs. A, B & C). Defendant McMillan specifically contends that he and Mr. Jones discussed such topics as potential witnesses, strategies, and the collective bargaining agreement that governed his employment with the police department (*Id.*).

On May 12, 1999, while attending a deposition of Plaintiff Keaton at the offices of GL & J, Defendant McMillan alleges that he saw and spoke to Mr. Jones (doc. 29, Ex. A). It was at that moment Defendant McMillan asserts that he became aware of the fact that Mr. Jones's present firm was now representing Plaintiffs (*Id.*). According to Defendant McMillan, Mr. Jones expressed his reservations to him about the propriety of GS & L representing Plaintiffs in this action, but then assured Defendant McMillan that he would not be involved in any way with this litigation (*Id.*).

Shortly thereafter, Defendants filed their Motion to Disqualify (doc. 29), asserting that Mr. Jones's firm of GS & L has an untenable conflict of interest in relation to the Parties to this litigation. Plaintiffs submitted their Response (doc. 34) which was followed by Defendants' Reply (doc. 39). This matter is now ripe for the Court's determination.

## DISCUSSION

■ The power to disqualify an attorney from a case is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Kitchen v. Aristech Chem.,* 769 F.Supp. 254, 256 (S.D.Ohio 1991) (quoting *Ex Parte Burr,* 22 U.S. 529, 531, 6 L.Ed. 152 (1824)). However, "the ability to deny one's opponent the services of his chosen counsel is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen,* 849 F.2d 222, 224 (6th Cir.1988). A motion to disqualify is the proper method for a party-litigant to bring an issue of conflict of interest or breach of an ethical duty to the court's attention. *Musicus v. Westinghouse Elec. Corp.,* 621 F.2d 742,

744 (5th Cir.1980). Confronted with such a motion, courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice. *Kitchen,* 769 F.Supp. at 257. In order to resolve these competing interests, the courts must balance the interest of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation. *General Mill Supply Co. v. SCA Servs., Inc.,* 697 F.2d 704, 711 (6th Cir.1982). Motions for attorney disqualification should be viewed with extreme caution for they can be misused as techniques of harassment. *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir. 1982)

Nonetheless, the Sixth Circuit Court of Appeals has approved the disqualification of attorneys in cases where it found that a conflict of interest actually existed. *See, e.g., Dana Corp. v. Blue Cross & Blue Shield Mut. of Northern Ohio,* 900 F.2d 882, 889 (6th Cir.1990); *Manning,* 849 F.2d at 227; *Gordon v. Norman,* 788 F.2d 1194, 1198 (6th Cir.1986); *General Mill,* 697 F.2d at 715; *General Elec. Co. v. Valeron Corp.,* 608 F.2d 265, 268 (6th Cir. 1979); *Melamed v. ITT Continental Baking Co.,* 592 F.2d 290, 293 (6th Cir.1979).

■ In *Dana Corp.,* the Sixth Circuit stated a three-part test for the disqualification of counsel for conflict of interest. *Id.* 900 F.2d at 889; *see also City of Cleveland v. Cleveland Elec. Illuminating Co.,* 440 F.Supp. 193, 207 (N.D.Ohio 1976), *aff'd,* 573 F.2d 1310 (6th Cir.1977), *cert. den'd,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). First, the moving party must be a former client of the adverse party's counsel. *Id.* That relationship can be consensual and contractual, or it can be implied. Second, there must be a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the facts and issues present in the present lawsuit. *Id.* Third, the attorney whose disqualification is being

sought must have had, or have been likely to have had in the course of his prior representation of the client, access to relevant confidential information. *Id.*

The first part of the test requires Defendants to show that Defendant McMillan had established an attorney-client relationship with Mr. Jones at the time in question. *Dana Corp.,* 900 F.2d at 889. Defendant McMillan asserts that he sought legal advice from Mr. Jones in connection with the allegations of Ms. Frost, and that Mr. Jones agreed to represent him in the event Ms. Frost pursued the filing of a civil complaint against Defendant McMillan (doc. 39). Moreover, Defendants contend that the allegations of Ms. Frost against Defendant McMillan are the very foundation upon which the claims of Plaintiffs in this action rest against Defendants (*Id.*). Plaintiffs concede that Defendant McMillan and Mr. Jones may have had an attorney-client relationship in regards to Ms. Frost's allegations. However, Plaintiffs argue that, since Ms. Frost did not file a civil complaint against Defendant McMillan, Mr. Jones never agreed to "represent" him in the case of Ms. Frost, nor in the case at bar (doc. 34).

The type of evidence necessary to support a determination as to whether an attorney-client relationship exists may vary with the circumstances. *Henry Filters, Inc. v. Peabody Barnes, Inc.,* 82 Ohio App.3d 255, 261, 611 N.E.2d 873, 876 (1992). The test is essentially "whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client." *Id.* Both Parties agree that there was an attorney-client relationship formed, but they disagree as to whether Mr. Jones ever "represented" Defendant McMillan in this case.

■ Contrary to what Plaintiffs urge is a critical distinction, this Court will not engage in such legal hair-splitting. An attorney-client relationship includes the representation of a client in court proceedings, advice to a client, and any action on a client's behalf that is connected with the

law. *Landis v. Hunt,* 80 Ohio App.3d 662, 669–70, 610 N.E.2d 554, 558–59 (1992). An essential element as to whether an attorney-client relationship has been formed is the "determination that the relationship invoked such trust and confidence in the attorney that the communication became privileged and, thus, the information exchanged was so confidential as to invoke an attorney-client privilege." *Landis,* 80 Ohio App.3d at 669, 610 N.E.2d at 558; *see also* Ohio Rev.Code § 2317.021 (1999).

■ In their Response, Plaintiffs again concede that Mr. Jones might have given legal advice to Defendant McMillan during their telephone conversation or conversations. However, Plaintiffs allege that, since Mr. Jones cannot recall any specifics as to what may or may not have been said during the telephone conversation, and since there are no longer any office notes of the conversation or conversations, he did not legally represent Defendant McMillan at that time

However, this Court finds as a matter of law that the rendering of legal advice from Mr. Jones to Defendant McMillan did establish an attorney-client relationship and begin legal representation in regards to many of the issues and facts that are now alleged in Plaintiffs' Complaint. Moreover, as an associate and/or shareholder of KHW & G, and later GL & J, we also find that the representation rendered by Mr. Jones to Defendant McMillan extended to KHW & G. Thus, the first part of the *Dana Corp.* test is met.

■ The second part of the test is that there must be a substantial relationship between the subject matter of the counsel's prior representation and the issues in this suit. *Dana Corp.,* 900 F.2d at 882. Plaintiffs argue that, since Mr. Jones never met with Defendant McMillan concerning the facts and issues contained in Plaintiffs' Complaint, never opened a file or kept notes on his discussions with Defendant McMillan, and never entered into an Agreement of Representation with Defen-

dant McMillan, there cannot be a substantial relationship between the allegations of Ms. Frost and the allegations contained in the Complaint (doc. 34). However, Defendants counter in their Reply that, the "Frost allegations are the vortex of the claims asserted by Plaintiffs in this case" (doc. 39).

This Court finds that Plaintiffs' Complaint has several of the same facts and issues interwoven with the facts and issues alleged by Ms. Frost. These facts and issues were part of the discussions between Mr. Jones and Defendant McMillan in September of 1995. It makes absolutely no difference that Mr. Jones never met with Defendant McMillan, never opened a file on him, or never signed an Agreement of Representation. Where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, disqualification should result. *City of Cleveland,* 440 F.Supp. at 207. This Court finds as a matter of law that a substantial relationship exists between the subject matter of Mr. Jones's representation of Defendant McMillan in relation to the sexual harassment allegations of Ms. Frost and the instant action. Thus, the second prong of the *Dana Corp.* test for disqualification of counsel for conflict of interest has been met.

■ The third part of the test for disqualification requires that the law firm sought to be disqualified be shown to have had access to relevant confidential information in the course of the prior disqualifying representation. *Dana Corp.,* 900 F.2d at 889. Plaintiffs allege that, although Mr. Jones can only recall one conversation in September of 1995 that he had with Defendant McMillan regarding some employment problem, he cannot at this time independently recall the particular facts, circumstances, or confidences that were exchanged in the conversation. Moreover, Plaintiffs contend that, Mr. Jones cannot confirm or deny most of the statements made by Defendant McMillan, Mrs. McMillan, or Mr. Zinser in their affidavits (doc. 34). Plaintiffs argue that "GL & J has not and will not learn confidential information in connection with Jones rendering of legal advice to [Defendant] McMillan, because Jones has no such information" (*Id.*). Defendants counter that the three-prong test set forth in *Dana Corp.* does not require the former client to prove that his former attorney recalls and will use confidential information that was given to him (doc. 39). Rather, Defendants assert that the third prong simply requires that the attorney acquired confidential information from the party seeking the disqualification (*Id.*).

Many courts that have dealt with the issue of whether disqualification of counsel is proper have looked to their respective state codes of professional responsibility for guidance. *Morgan v. North Coast Cable Co.,* 63 Ohio St.3d 156, 159, 586 N.E.2d 88, 90 (1992). Our research indicates that courts in Ohio are no exception to this practice. *See Centimark Corp. v. Brown Sprinkler Service Inc.,* 85 Ohio App.3d 485, 488, 620 N.E.2d 134, 136 (1993). In Ohio, the Disciplinary Rules recite the ethical obligations of an attorney toward his or her client. Disciplinary Rule 4–101 of the Code of Professional Responsibility concerns the preservation of confidences and secrets of a client. Disciplinary Rule 4–101(A) defines "confidences" as information protected by the attorney-client privilege. Disciplinary Rule 4–101(B)(2) states that it is "[t]he obligation of a lawyer to preserve the confidences and secrets of his client" and establishes that this obligation continues after the termination of counsel's employment. In addition, Disciplinary Rule 5–105 establishes when an attorney must refuse to accept or continue employment. One example of when an attorney must refuse to accept or continue employment is when the interests of another client impairs the independent professional judgment of the attorney. Disqualification Rule 5–105 also speaks to imputed disqualification and states in pertinent part:

(A) A lawyer shall decline proffered employment if [in] the exercise of his independent professional judgment [on] behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C). (D) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment.

DR 5–105; *see also Kala v. Aluminum Smelting & Refin. Co.,* 81 Ohio St.3d 1, 5, 688 N.E.2d 258, 262 (1998).

Plaintiffs offer no rebuttal to DR 5–105 except to argue that, since Mr. Jones does not recall any shared confidences with Defendant McMillan, he cannot possibly be of any help to GL & J in their prosecution of this action. However, this Court notes that Canon 9 of the Code of Professional Responsibility states that an attorney should avoid even the appearance of impropriety. In addition, Plaintiff fails to rebut the presumption of shared confidences by Mr. Jones and GL & J by failing to produce any evidence to show that a "Chinese wall[3] has been erected by GL & J in this action, so as to preserve the confidences of Defendant McMillan. Because of the importance of these ethical principles, it is this Court's duty to safeguard the preservation of the attorney-client relationship. In doing so, a court helps to maintain public confidence in the legal profession and assists in protecting the integrity of the judicial proceeding." *United States v. Agosto,* 675 F.2d 965, 969 (8th Cir.1982).

Therefore, the Court finds as a matter of law that (1) Mr. Jones is an agent, as well as a partner, of the GL & J law firm; (2) Mr. Jones did have access to relevant confidential information to this action during the course of his prior representation of Defendant McMillan. Thus, the facts alleged in this action meet the *Dana Corp.* test for attorney disqualification. *See Id.* at 889. Furthermore, the Court concludes that the continued legal representation by GL & J of Plaintiffs in this action would violate the firm's ethical obligations under the Ohio Code of Professional Responsibility due to an obvious conflict of interest between the past representation of Defendant McMillan and the present representation of Plaintiffs in this matter.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants Motion to Disqualify Plaintiffs' Counsel, Gustavson, Lewis & Jones Co, L.P.A., from representing any Party in this adversary proceeding. Accordingly, the firm of Gustavson, Lewis, & Jones Co., L.P.A. shall promptly withdraw from representation of any Plaintiff in this matter.

SO ORDERED.

---

**3.** "Chinese wall" has become the legal term to describe a "procedure that permits an attorney involved in an earlier adverse role to be screened from other attorneys in the firm so as to prevent disqualification of the entire law firm simply because one member of firm previously represented a client who is now an adversary of the client currently represented by the firm." Black's Law Dictionary 240 (6th ed.1990).