OPINION
This timely appeal arises from a decision of the Jefferson County Court of Common Pleas granting summary judgment to Appellees in a legal malpractice action. Appellees were hired as legal counsel in the administration of the estate of Mr. William Schaefer, Sr. and were also called upon to give estate planning advice to Mrs. Mary Schaefer, the surviving spouse and personal representative of her deceased husband's estate. For the following reasons we reverse the judgment of the trial court and remand this cause for further proceedings.
Mr. and Mrs. Schaefer hired attorney Andrew W. Miller ("Miller") in 1993 to draft wills for them. Miller prepared simple reciprocal wills in which each spouse devised and bequeathed all property to the other, with the Schaefers' three children named as contingent beneficiaries. Mrs. Schaefer was named as executrix of her husband's estate, and vice versa. Appellant Terry A. Hosfelt was named as the alternate executor in both wills.
Mr. Schaefer died on January 28, 1995. Mrs. Schaefer was appointed as executrix of her deceased husband's estate. In early 1995, she contacted Appellee David E. Henderson ("Henderson"), a lawyer in Steubenville, Ohio, to perform legal services in the administration of the will. She also sought advice regarding her own estate planning because of the substantial assets she would be inheriting from Mr. Schaefer's estate. Appellee Chalfant, Henderson and Dondzila ("Chalfant") is a law firm in Steubenville, Ohio, with which Henderson is associated through an expense-sharing agreement.
Henderson consulted with Mrs. Schaefer and Appellant on May 5, 1995. Mrs. Schaefer indicated she wanted to make a new will, and Henderson suggested that she consider creating a living trust.
Henderson admitted Mr. Schaefer's will to probate on May 25, 1995. He estimated the estate to be valued at $1,009,500.00. At this time both Henderson and Mrs. Schaefer realized that her subsequent testamentary estate would be subject to significant federal estate taxes unless steps were taken to avoid such taxes.
On June 16, 1995, Henderson filed the Inventory and Appraisal indicating that Mr. Schaefer's estate was valued at $831,691.87.
Henderson, Mrs. Schaefer and Appellant met at certain times in late 1995 to discuss estate administration and estate planning. They discussed the fact that Mrs. Schaefer was dying of cancer, that she was not sure that her children would be responsible enough to receive a large inheritance outright and that she did not want her estate to pay federal taxes if possible. Henderson told her that she could reduce her estate taxes by making gifts of property or by refusing to accept some or all of her inheritance from Mr. Schaefer's estate. Henderson did not advise Mrs. Schaefer on the details or tax consequences of his suggestions, or on the differences between a federal tax disclaimer and an election against the will. Appellant also alleges that Henderson failed to draft trust documents for Mr. Schaefer, that he lost stock certificates, that he failed to effect securities transfers and that he delayed filing estate documents.
On October 24, 1995, Mr. Schaefer's federal estate tax return was filed, listing the value of the gross estate at $974,632.00. No federal taxes were due as a result of the unlimited federal marital deduction and the unified federal tax credit.
Mrs. Schaefer died on December 27, 1995. Mrs. Schaefer had not revised her will, executed any trust documents, filed any disclaimers regarding Mr. Schaefer's estate, or elected to take against Mr. Schaefer's will. Appellant was appointed as administrator de bonis non with the will annexed of both Mr. and Mrs. Schaefers' estates. Mrs. Schaefer's federal gross estate, largely derived from stocks and other securities bequeathed from her late husband, was valued at $1,050,468.00. Her estate paid a federal estate tax of $94,574.00. Mrs. Schaefer's children are the sole beneficiaries of her estate.
On January 29, 1996, Appellant filed a complaint in the Jefferson County Court of Common Pleas alleging that Miller, Henderson and Chalfant committed legal malpractice in advising the Schaefers in their estate planning and in the administration of Mr. Schaefer's estate.
Miller filed a Motion for Summary Judgment on January 21, 1997, which was denied on February 3, 1997. Miller filed a Motion for Reconsideration of the February 3, 1997, Journal Entry. His motion was granted on April 17, 1997, and the claim against Miller was dismissed.
Appellees Henderson and Chalfant filed a Motion for Summary Judgment on July 9, 1997. The motion argued that the beneficiaries of Mrs. Schaefer's estate had no standing to sue Appellees for legal services rendered to Mrs. Schaefer while she was still alive. They argued that, at the time that they gave Mrs. Schaefer estate planning services, the beneficiaries were only potential beneficiaries. Therefore, they argued that these potential beneficiaries were not in privity with the client for whom the legal services were performed, Mrs. Schaefer, citing Simon v.Zipperstein (1987), 32 Ohio St.3d 74, in support. The trial court agreed with Appellees' argument and granted their Motion for Summary Judgment on August 11, 1997. Appellant timely appealed that judgment on August 21, 1997.
An appellate court reviews the decision to grant a motion for summary judgment de novo, using the same standards as the trial court as set forth in Civ.R. 56(C). Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Before summary judgment can be granted the court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably toward the party against whom the motion for summary judgment is made, that conclusion is adverse to the nonmoving party. Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327. "[T]he moving party bears the initial responsibility for informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,296. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
Appellants's only assignment of error states:
 "APPELLANT STATES AS HIS FIRST ASSIGNMENT OF ERROR THAT THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF BOTH DEFENDANTS ANDREW W. MILLER AND DEFENDANT DAVID E. HENDERSON AND AGAINST THE APPELLANT ADMINISTRATOR DBN WWA OF THE ESTATES OF WILLIAM H. SCHAEFER, SR. AND MARY E. SCHAEFER, BOTH DECEASED."
Appellant's notice of appeal states that he is appealing the final judgment entered on August 11, 1997. Although Appellant mentions in his assignment of error that he is also appealing the decision to grant summary judgment in favor of Andrew W. Miller, Appellant has not taken sufficient steps to preserve his appeal of that judgment. App.R. 3(D) requires that the notice of appeal, "shall designate the judgment, order or part thereof appealed from * * *". There is no mention in Appellant's notice of appeal of the April 17, 1997, Journal Entry granting Miller summary judgment. The Journal Entry states that Appellant did not even appear at the hearing on the motion. Appellant's notice of appeal does not list Miller as a party served with notice of the appeal. None of the briefs in this appeal were sent to Miller and there is no indication that any document relating to this appeal has been served on Miller. In fact, the cover page of Appellant's brief on appeal only lists Henderson as the party appellee.
This Court is well aware that, "in construing the Rules of Appellate Procedure, the law favors and protects the right of appeal and that a liberal construction of the rules is required in order to promote the objects of the Appellate Procedure Act and assist the parties in obtaining justice." Maritime Mfrs., Inc. v. Hi-Skipper Marina (1982),70 Ohio St.2d 257, 258. The only jurisdictional requirement for the filing of a valid appeal is the timely filing of a notice of appeal. App.R. 3(A). Nevertheless, this Court is vested with the discretion, when presented with other defects in the notice of appeal, to determine whether sanctions are warranted, including the sanction of dismissing all or part of an appeal. Transamerica Ins. Co. v. Nolan (1995), 72 Ohio St.3d 320, at syllabus.
The purpose of the notice of appeal is to apprise the opposite party of the taking of the appeal. Maritime, supra, 70 Ohio St.2d at 259. Appellant has not taken any steps to notify Miller of this appeal. Appellant's brief makes only a few passing references to Miller and its conclusion only refers to Appellees Henderson and Chalfant. Therefore, as Appellant has precluded Miller from appearing and defending in this matter, we dismiss the appeal as it relates to the April 17, 1997, decision to grant summary judgment in favor of Andrew W. Miller.
Appellant's remaining argument on appeal is that the trial court mistakenly interpreted this case as one where the disgruntled beneficiaries are attempting to sue the attorney of the decedent for malpractice. Appellant argues that it is the administrator of the estate, not the beneficiaries, who initiated and is prosecuting this action with a view towards preservation of estate assets.
Appellees' argument, which was the same argument used by the trial court in granting Appellees' motion for summary judgment, is that there can be no liability for attorney malpractice if there is no privity between the attorney and the party alleging malpractice. Appellees argue that the beneficiaries of Mrs. Schaefer's estate are the real parties in interest in this case. Appellees contend that an attorney who drafts a will or gives estate planning advice is not in privity with intended beneficiaries of the will or estate plan unless the interests of the beneficiaries are vested at the time of the alleged malpractice, or unless there are special circumstances such as fraud, bad faith, collusion, or malicious conduct, citing Simon v. Zipperstein, supra,32 Ohio St.3d at 77.
Although Appellees state a correct point of law, we agree with Appellant that it is largely irrelevant to the case at bar. In the matter before us, the administrator of the estate, not the beneficiaries, has brought this claim in order to preserve the assets of the entire estate. We agree with Appellant that the primary issue is whether or not a legal malpractice claim survives the death of the party injured by the malpractice, and, if so, whether the personal representative of the estate is the proper party to bring the claim.
R.C. § 2305.21 states:
 "In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto."
Under the statute, a claim for legal malpractice survives the death of the injured party if it, "(1) is a cause of action that survives at common law or (2) constitutes an injury to [the injured party's] property interests." Loveman v. Hamilton (1981), 66 Ohio St.2d 183, 184. Loveman
held that an action for legal malpractice meets both of the tests set forth in R.C. § 2305.21. Id. Although Loveman involved the question of whether the malpractice action survived the death of the attorney who allegedly engaged in malpractice, the statute applies equally to "the death of the person entitled or liable thereto." R.C. § 2305.21
(emphasis added). In Loveman, the deceased was liable for malpractice. In the instant case, the deceased is the party entitled to assert the malpractice claim. The Loveman holding applies to mandate the survival of a legal malpractice claim after the death of the party entitled to assert the claim.
The personal representative of decedent's estate may ordinarily prosecute, in a representative capacity, any cause which the decedent could have instituted and which survives the decedent. Dawson v. OhioDept. of Human Services (1990), 68 Ohio App.3d 262, 263; Oncu v. Bell
(1976), 49 Ohio App.2d 109, 111. Thus, a personal representative of a decedent's estate stands in the shoes of the decedent to assert claims on behalf of the estate. Santa v. State Dept. of Human Ser. (Jan. 20, 2000), Cuyahoga App. No. 74690, unreported; Hopper v. Nicholas (1922),106 Ohio St. 292, 302. Although no Ohio cases have specifically examined the issue, other jurisdictions have held that it is up to the personal representative of the estate to assert financial claims on behalf of the estate when these claims involve preparation of estate documents or estate planning. Nevin v. Union Trust Co. (Me. 1999), 726 A.2d 694, 701;Olson v. Toy (1996), 46 Cal.App.4th 818, 823.
The outcomes of various Ohio cases seem to presume, without directly addressing the issue, that a personal representative of the estate has standing to assert legal malpractice claims which arose during the decedent's lifetime. Nix. v. Chalko (Feb. 19, 1998), Cuyahoga App. No. 72023, unreported; Higgins v. McDonnell (1995), 105 Ohio App.3d 199,1999; Landis v. Hunt (1992), 80 Ohio App.3d 662, 666; Frost v. Jonson
(Jan. 29, 1982), Butler App. No. CA80-11-0124, unreported. In other areas of malpractice, such as medical malpractice, courts have held that a personal representative has standing to assert claims on behalf of the decedent's estate. Thompson v. Wing (1994), 70 Ohio St.3d 176, 179; Klemav. St. Elizabeth's Hospital of Youngstown (1960), 170 Ohio St. 519, 521.
Appellees argue that the primary harm alleged by Appellant is that Mrs. Schaefer's estate paid $94,574.00 in federal estate taxes that she may not have had to pay but for Appellees' alleged negligence. Appellees maintain that the payment of taxes does not constitute legal harm. Appellees argument is not persuasive in this respect.
To plead a cause of action for attorney malpractice, a plaintiff must allege: (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach.Krahn v. Kinney (1989), 43 Ohio St.3d 103 at syllabus. Appellant has alleged and provided sufficient evidence to create a genuine issue of material fact that Mrs. Schaefer's estate would not have had to pay federal estate taxes but for Appellees' negligence. Every dollar paid by the estate in taxes means that there was one dollar less to distribute as Mrs. Schaefer intended. Mrs. Schaefer's estate was valued, for federal estate tax purposes, at over $1,000,000.00. Mrs. Schaefer hired Appellees for estate planning advice so that as much of that amount would go to her children and as little as possible would be paid in estate taxes. Although necessary taxes may not constitute an injury to a client's interests, taxes which could have been avoided by the exercise of the knowledge, skill and ability ordinarily possessed and exercised by legal professionals under similar circumstances can be considered as an injury.
An attorney who is specifically instructed by a client should follow those instructions with reasonable care, or he or she may be liable for all damages proximately caused by the failure. McInnis v. Hyatt LegalClinics (1984), 10 Ohio St.3d 112, 112; see also 1 Mallen and Smith, Legal Malpractice (4 ed. 1996), 593, Section 8.8. Appellees argue that Mrs. Schaefer may not have chosen to follow their advice had they specifically told her about the tax consequences. Appellees' argument relates to an issue of fact concerning whether their negligence actually caused the alleged harm. Where factual allegations in the evidentiary materials are in conflict, a genuine issue of material fact exists and summary judgment should not be granted. Murray v. Murray (1993),89 Ohio App.3d 141, 145.
Appellees also argue that, if Mrs. Schaefer had lived longer, she may have consumed more of her assets which would have reduced her tax liability. They maintain that any claim for damages is purely speculative because there was no way to know the amount of Mrs. Schaefer's actual estate tax liability while she was still alive. Appellees are attempting to create ambiguity when there is none. Mrs. Schaefer's federal tax liability became fixed at her death at $94,574. It is that specific tax liability which is being claimed as damages. This is not a case of a living client attempting to prove potential estate tax liability.[1]
This is a case of a decedent's estate attempting to recover the specific amount paid in estate taxes which the personal representative of the estate argues it would not have been necessary to pay but for Appellees' negligence.
We conclude that a decedent's legal malpractice claim arising from errors by an attorney in rendering estate planning services is properly brought by the personal representative of the estate when excess estate taxes are paid by the estate in contravention of the decedent's intended estate plan. Thus, it was improper to dismiss this claim in summary judgment.
Interestingly, Appellees' motion seeking summary judgment makes no argument nor points to any evidence indicating questions of material issues of fact exist regarding Appellant's claims of legal malpractice in the administration of Mr. Schaefer's estate. Instead, Appellees erroneously argue that Appellant is not the proper party to bring such a claim. We hold, however, that claims for losses to Mr. Schaefer's estate, such as increased administration costs or costs involved in correcting mistaken filings, are properly brought by the personal representative of the estate and are recoverable in a legal malpractice action. Bingamon v. Curren (1992), 83 Ohio App.3d 711, 713; Keaton Co.v. Kolby (1971), 27 Ohio St.2d 234, 235.
For the foregoing reasons, we hold that Appellant's assignment of error has merit. We must reverse the August 11, 1997, Journal Entry of the Jefferson County Court of Common Pleas and remand this case to the trial court for further proceedings according to law and consistent with this Court's opinion as to Appellees Henderson Chalfant.
 ____________________ WAITE, J.
Cox, P.J., dissents; see dissenting opinion.
Donofrio, J., concurs.
[1] Even if Mrs. Schaefer had realized Appellees' negligence while she was still alive, her potential federal estate tax damages may not have been speculative. A recent IRS Private Letter Ruling suggests that a remedy for legal estate planning malpractice would be to set up a trust, funded by the negligent attorney, equal to the present value of the expected future excess estate tax liability. Priv.Ltr.Rul. 97-36-032 (Sept. 5, 1997). When the time for actually paying the taxes arrived, presumably after the death of the complaining party, any funds remaining after the payment of the estate taxes could be returned to the attorney, law firm, or other designated party. See Martin D. Begleiter, FirstLet's Sue All the Lawyers — What Will We Get: Damages for EstatePlanning Malpractice (2000), 51 Hastings L.J. 325, 361-362. Mrs. Schaefer could also have made the full gifts to her children while she was still living, generating presently payable gift taxes likely to be equal to the estate taxes paid by Appellant. See Linck v. Barokas Martin (Alaska 1983), 667 P.2d 171.