DECISION AND JUDGMENT ENTRY
Donald D. Davis appeals the judgment of the Chillicothe Municipal Court denying the appeal of his administrative license suspension. He assigns the following errors:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY REFUSING TO RECUSE HIMSELF FROM PRESIDING OVER DEFENDANT-APPELLANT'S HEARING.
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT'S JUDGMENT ENTRY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 THIRD ASSIGNMENT OF ERROR
 THE COURT COMMITTED PREJUDICIAL ERROR BY NOT SUSTAINING DEFENDANT APPELLANT'S ADMINISTRATIVE LICENSE SUSPENSION APPEAL AS THERE WERE NO REASONABLE GROUNDS TO BELIEVE DEFENDANT APPELLANT WAS OPERATING A MOTOR VEHICLE UPON THE PUBLIC HIGHWAYS OF OHIO WHILE UNDER THE INFLUENCE OF ALCOHOL.
 FOURTH ASSIGNMENT OF ERROR
 DEFENDANT-APPELLANT'S A.L.S. HEARING APPEAL SHOULD HAVE BEEN SUSTAINED FOR FAILURE OF THE STATE TO PROVIDE HIM WITH HIS STATUTORY AND CONSTITUTIONAL RIGHTS IN VIOLATION OF LAW.
Ohio Highway Patrol troopers stopped appellant for not having a rear license plate light. He was charged with OMVI and his diver's license was administratively suspended for refusing to submit to alcohol testing. The OMVI case was ultimately dismissed and appellant pursued an appeal of the ALS suspension. This appeal involves only the trial court's ruling that the ALS was proper. Finding no merit in any of appellant's assigned errors, we affirm the lower court's judgment.
 I.
At the ALS hearing, Trooper Michael Maughmer testified that he was on patrol on December 29, 1999 at approximately 2:00 a.m. with trainee Trooper Rusty Lanning. He observed a Dodge pickup truck travel westbound on Eastern Avenue and turn right onto Watt Street. After the truck turned, it pulled to the right side and came to a stop partially in the roadway. Trooper Maughmer noticed that the truck did not have a rear license plate light in violation of R.C. 4513.05 so he turned on the patrol car's pursuit lights.
When the troopers approached the truck, appellant cracked his window open about two inches and handed Trooper Lanning his license. Appellant then rolled his window back up. The troopers asked appellant to roll down the window so they could conduct their stop, but appellant refused. Trooper Maughmer acknowledged that not having a license plate light is a minor misdemeanor and the patrol policy is to write a summons for such a violation.
Trooper Maughmer testified that it was dark out, but he could see that appellant was talking on his cellular phone. Appellant told Trooper Maughmer several times that he was talking to his attorney. Trooper Maughmer advised appellant that he wanted him to participate in the stop and he could talk to his attorney when the stop was completed. Trooper Maughmer asked appellant several times to roll down the window, to step out of the vehicle and to participate in the stop with the troopers. However, appellant consistently refused. Trooper Maughmer then notified appellant that if he did not comply, he would be arrested for failure to comply with a lawful order of a police officer. Trooper Maughmer also instructed appellant that he would break the window if necessary. At that point, appellant cracked the window and Trooper Maughmer told him that he was under arrest for failing to comply with the lawful order of a police officer. Trooper Maughmer also notified appellant that he would be maced if he did not comply. The troopers eventually pried the truck's door open and removed appellant from the vehicle, spraying him with mace in the process. According to Trooper Maughmer, appellant resisted arrest after he was removed from the vehicle.
Trooper Maughmer testified that when appellant looked through the window, his eyes were bloodshot and glassy. When the window was cracked, Trooper Maughmer could smell a strong odor of alcohol coming from appellant's breath as he spoke. Further, appellant's actions were not those of a sober person. When appellant was walking to the police vehicle, he had trouble walking and the troopers had to help him walk to the car. As a result, Trooper Maughmer concluded that appellant was driving under the influence of alcohol without conducting field sobriety tests.
After appellant was arrested, Trooper Maughmer notified appellant that he was being arrested for driving under the influence of alcohol, failing to have a license plate light and failing to wear a safety belt. Appellant was transported to the Ross County Sheriff's Department and taken to the booking area. When Trooper Maughmer attempted to uncuff appellant, he turned around in an aggressive manner and made racial slurs towards Trooper Maughmer. Appellant was physically taken to the ground, uncuffed, and placed in a holding cell by the deputies.
Trooper Lanning and Trooper Maughmer went to the cell, opened the hole in the cell door, and read appellant Bureau of Motor Vehicles Form 2255 and the additional consequence form regarding submission to a breathalyzer test. According to Trooper Maughmer, Trooper Lanning read appellant the entire form and gave appellant a form to read along with him. The form advised appellant that he would be asked to submit to a series of tests. If he refused the tests or tested over the legal blood alcohol limit, his license would be suspended. Appellant reached through the window and smacked the form from Trooper Lanning's hand stating, "Fuck you guys." Trooper Maughmer informed appellant that this would be considered a refusal and appellant repeated his statement. Prior to that, appellant did not ask to speak to an attorney.
Trooper Rusty Lanning testified that they told appellant he was under arrest after the door to his truck was opened and he was removed. They also notified him that he had the right to remain silent. Trooper Lanning testified that the top of the window was a few inches to a foot above his head. He did not smell any alcohol when the window was cracked open, but Trooper Maughmer is approximately six inches taller than him. Trooper Lanning testified that appellant had a red, flushed face and his eyes were very glassy. He was slumped over and having trouble sitting. When he spoke, his speech was slurred. Trooper Lanning admitted that he did not put any of these facts in his written summary and could not explain why.
Trooper Lanning testified that he read appellant the appropriate driving under the influence forms through the door in the jail cell. He showed appellant a copy of the form, but appellant did not have a copy inside the cell. Trooper Lanning did not ask appellant whether he could read without glasses. Appellant smacked the paper out of Trooper Lanning's hands and stated "fuck you guys" and "fuck your test." Trooper Lanning could not recall if appellant asked to speak to an attorney.
Appellant testified that he was traveling on Western Avenue when he noticed a car closely following him. He turned onto Watt Street and decided to pull over and get out of the vehicle's way. As soon as he pulled over, the vehicle's lights came on. The troopers approached his truck and appellant partially rolled the window down and gave them his license and insurance papers. He did not roll the window down any further because it was a cold evening and he hadn't been feeling well. Appellant testified that he did not feel the troopers had the authority to order him to roll the window down further.
Appellant asked the troopers numerous times if he was under arrest for anything and their response was "just roll down the window." After about a minute, the trooper stated that he was under arrest for resisting arrest. They maced appellant through the window, shooting him in the left ear and in the eyes. Appellant could not see and his eyes burned. Appellant was then removed from the vehicle and placed on the ground. The troopers informed him that he was under arrest for operating a motor vehicle while under the influence of alcohol. He had trouble walking to the cruiser because he could not see well and it was slick out.
When appellant arrived in the booking room, he asked to call an attorney approximately twenty times, but the troopers never acknowledged his request. Appellant testified that he was never given a copy of the form or shown the form while he was in the cell. Further, he did not have his glasses. At one point, the troopers were huddled outside the door talking through a little hole, however appellant could not understand what they were saying. Appellant testified that he cannot hear well and the sound echoed in the hallway. He could not recall if he told the troopers that he could not hear them. Appellant denied knocking the form from Trooper Lanning's hand.
Following the hearing, the magistrate denied appellant's request to remove the administrative license suspension. Appellant objected to the magistrate's finding, but the municipal court agreed that appellant failed to meet his burden of proof and the administrative license suspension should continue. A timely appeal followed.
 II.
In his first assignment of error, appellant alleges that the municipal court judge erred in refusing to recuse himself from appellant's case. The trial judge is a former Ross County assistant prosecutor who prosecuted appellant on a felony "fleeing" charge. The judge explained that he recalled prosecuting appellant but did not bear any animosity towards him and would not recuse himself.
Disqualification of a municipal court judge for reasons of prejudice or bias is controlled by R.C. 2701.031, which requires a party or the party's counsel seeking disqualification to file an affidavit setting forth the "specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations." The clerk of the trial court is to enter the filing on the docket and then notify the court of common pleas to which the municipal court is inferior. The court of common pleas then determines whether prejudice or bias exists.
A finding of bias or prejudice "implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants, with the formation of a fixed anticipatory judgment on the part of the judge, as contra-distinguished from an open state of mind which will be governed by the law and the facts." State ex rel. Pratt v. Weygandt
(1956), 164 Ohio St. 463, paragraph four of the syllabus. A trial judge is presumed not to be biased or prejudiced and the party alleging these deficiencies must set forth evidence to overcome the presumption of integrity. See Okocha v. Fehrenbacher (1995), 101 Ohio App.3d 309, 322;State v. Wagner (1992), 80 Ohio App.3d 88, 93.
Appellant failed to follow the proper procedure for requesting the removal of a municipal court judge as outlined in R.C. 2701.031. Rather than filing the required affidavit, appellant simply filed a motion to transfer the case. As appellant did not follow the requisite procedure, this alleged error is waived. Furthermore, even if this error was properly before us, appellant has failed to demonstrate that the trial judge was prejudiced against him. The fact that the judge prosecuted appellant in a prior case is not a per se basis to establish bias. Something more must be demonstrated to over come the presumption of integrity.
Appellant's first assignment of error is overruled.
 III.
In his second assignment of error, appellant argues that the court's decision to deny his appeal of the ALS is against the manifest weight of the evidence for various reasons.
An appeal of an ALS suspension is a civil matter. See State v.Williams (1996), 76 Ohio St.3d 290, 296. A civil judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson (1993), 66 Ohio St.3d 610.
Appellant contends that the trial court improperly considered his refusal to either roll down his window or exit his truck upon their demands in finding that the troopers had reasonable grounds to believe that he was operating his vehicle while under the influence. Implicit in this contention is the argument that he was not legally required to honor those demands, and that accordingly, the troopers had no right to forcefully remove him from his truck. He argues that because he was unlawfully taken from his vehicle, and there was no independent basis for establishing probable cause to arrest him for OMVI prior to that point, none of the trooper's observations after his removal can be used to establish "reasonable grounds" for an ALS suspension. He is wrong in both assertions.
A person whose driver's license is administratively suspended may appeal that suspension under R.C. 4511.191(H), which reads:
(1) * * *
 If the person appeals the suspension at the person's initial appearance, the scope of the appeal is limited to determining whether one or more of the following conditions have not been met:
 (a) Whether the law enforcement officer had reasonable ground to believe the arrested person was operating a vehicle upon a highway or public or private property used by the public for vehicular travel or parking within this state while under the influence of alcohol * * * and whether the arrested person was in fact placed under arrest;
 (b) Whether the law enforcement officer requested the arrested person to submit to the chemical test designated pursuant to division (A) of this section;
 (c) Whether the arresting officer informed the arrested person of the consequences of refusing to be tested or of submitting to the test;
(d) Whichever of the following is applicable:
 (i) Whether the arrested person refused to submit to the chemical test requested by the officer;
* * *
 (2) If the person appeals the suspension at the initial appearance, the judge or referee of the court * * * shall determine whether one or more of the conditions specified in divisions (H)(1)(a) to (d) of this section have not been met. The person who appeals the suspension has the burden of proving, by a preponderance of the evidence, that one or more of the specified conditions has not been met. If during the appeal at the initial appearance the judge or referee of the court * * * determines that all of those conditions have been met, the judge, referee, or mayor shall uphold the suspension, shall continue the suspension, and shall notify the registrar of the decision on a form approved by the registrar. * * *
 Following a hearing, the magistrate found that appellant failed to prove that one or more of the conditions set forth in divisions (H)(1)(a) to (d) had not been met and the suspension should continue. Appellant objected to the magistrate's decision and moved the municipal court to sustain his administrative license suspension appeal.
The court found that appellant's objections were not well-taken and overruled them. Specifically, the court found that the troopers were authorized to stop appellant to investigate the license plate light violation. The odor of alcohol, bloodshot eyes and flushed face noticed by the officers did not rise to the level of probable cause to arrest; however, the troopers were authorized to order appellant to lower his window. When appellant failed to comply with this order, the troopers were authorized to arrest appellant and take him into custody. Thereafter, the troopers observed that appellant had difficulty walking and acted erratically at the jail. These actions could be considered in determining that the troopers had reasonable grounds to believe appellant was operating a motor vehicle under the influence of alcohol. The court found that the troopers asked appellant to submit to a chemical test and informed him of the consequences if he refused the test. Appellant then refused to submit to the test. Therefore, all the specified conditions for an administrative license suspension were satisfied and the suspension should continue.
Appellant does not contest the initial stop of his vehicle by the troopers. Rather, he argues that the troopers could not legally break into his truck or arrest him. This contention obviously presents us with a matter of law, which we review de novo. The United States Supreme Court has held that a law enforcement officer may order a driver to get out of a vehicle that the officer has lawfully stopped to investigate a traffic violation even though the officer does not suspect the driver has engaged in criminal activity. Pennsylvania v. Mimms (1977), 434 U.S. 106, 111,54 L.Ed.2d 331, 337, 98 S.Ct. 330. The Court held that a Fourth Amendment analysis must focus on the reasonableness, under all the circumstances, of the governmental intrusion into the citizen's personal security. Id.,434 U.S. at 109, 54 L.Ed.2d at 335. In turn, reasonableness depends upon a balance between the public interest and the individual's interest in freedom from arbitrary governmental interference. Id., 434 U.S. at 109,54 L.Ed.2d at 336. The Mimms court held that the public's interest in the safety of its law enforcement officers outweighed the de minimis
intrusion into the driver's personal liberty by being asked to exit his car. Id., 434 U.S. at 111, 54 L.Ed.2d at 337. See, also, State v. Evans
(1993), 67 Ohio St.3d 405 (holding that ordering a motorist out of a car following a stop for an equipment violation is permissible).
Trooper Maughmer testified that he asked appellant several times to roll down the window and to step out of the vehicle. Appellant himself testified that the trooper ordered him to roll down the window, but he refused because he didn't feel the trooper had the authority to make such a request. Since higher authority has concluded that a law enforcement officer has the authority to order a driver out of a vehicle during a traffic stop, surely he can make the less intrusive request that the driver roll down his window. See, by way of analogy, Mimms, supra, andEvans, supra. Accordingly, we reluctantly conclude that Trooper Maughmer's order that appellant roll down his window or step out of the vehicle was reasonable and lawful.
Under R.C. 2921.331(A), it is a misdemeanor of the first degree to "fail to comply with any lawful order or direction of any police officer invested with authority to direct, control or regulate traffic." As the Ninth District Court of Appeals noted in State v. Wagenknecht (June 29, 1994), Wayne App. No. 2864, unreported, a failure to comply conviction does not require that the order given directly relate to traffic matters. "The plain meaning of the statute is that a person is guilty of failure to comply if, after receiving a lawful order from a police officer invested with authority to direct, control, or regulate traffic, that person failed to comply with that order. The police officer's authority must derive from traffic regulation." Id.
Here, the troopers conducted a legal stop and Trooper Maughmer lawfully ordered appellant to roll down his window or step out of the vehicle. Appellant failed to comply with this order in violation of R.C. 2921.331(A). The troopers could lawfully arrest appellant for this offense. The fact that appellant was not formally charged with failure to comply has no bearing on the lawfulness of his initial arrest for that charge.
We also find no merit in appellant's argument that the trial court could not consider the trooper's observations after his removal. In Statev. Justice (Nov. 16, 1999), Pike App. No. 99CA631, unreported, we held that there must be indicia of impaired driving or impaired driving ability to support an arrest for OMVI absent a per se violation. We held that an arrest for OMVI based solely on the odor of alcohol on a defendant's breath, glassy, abnormally shiny eyes and defensive and verbally abusive behavior was unlawful in the absence of evidence of impaired driving or a per se violation. Having a drink and then driving does not always equal OMVI. Id., citing State v. Hughart (Feb. 23, 1990), Gallia App. No. 88CA21, unreported; State v. Finch (1985),24 Ohio App.3d 38. However, as Judge Abele noted in his concurrence toJustice, an officer may stop a suspect for reasons unrelated to erratic driving and then discover impaired coordination which subsequently forms the basis for an OMVI charge.
In Justice, we properly refused to consider the appellant's actionsafter the arrest in determining whether the OMVI arrest was lawful. Here, however, appellant was lawfully arrested for failure to comply independently of and prior to the OMVI charge. Therefore, his actions after his initial arrest can be considered in determining whether the troopers subsequently had reasonable grounds to believe he was driving while under the influence of alcohol. The fact that Trooper Lanning did not include any of the facts supporting the OMVI charge in his report may be relevant to his credibility, but it does not affect the lawfulness of appellant's arrest if the trial court, in its role of fact finder, found the trooper's testimony was believable.
Here, Trooper Maughmer testified that appellant's eyes were glassy and bloodshot, he had alcohol on his breath, and he failed to cooperate with the troopers' orders. Trooper Lanning admitted that he did not smell any alcohol, but observed that appellant's face was red and flushed, his eyes were glassy, and he was slumped in his seat. Neither trooper testified as to why physical coordination tests were not conducted, though given appellant's refusal to even roll down his window, the answer appears obvious. Under the Justice rationale, this evidence is insufficient to establish that appellant's driving ability was impaired. However, Trooper Maughmer also testified that appellant had trouble walking to the patrol car and required assistance from the troopers.
In sum, we hold that there was sufficient competent, credible evidence to support the trial court's finding that the trooper had reasonable grounds to believe appellant was driving while under the influence of alcohol. Therefore, we overrule appellant's second assignment of error.
 IV.
In his third assignment of error, appellant argues that the court erred in sustaining appellant's administrative license suspension because there were no reasonable grounds to believe appellant was operating a motor vehicle while under the influence of alcohol. Appellant relies on the fact that Trooper Lanning wrote on Form 2255 that the reasonable grounds of OMVI were "4513.05 License Plate Light" and this provides absolutely no basis for the contention that appellant was driving while under the influence.
The purpose of this line of the form is for the officer to explain what basis he has for concluding that the suspect was driving while under the influence of alcohol. Apparently, Officer Lanning wrote in the grounds for stopping appellant in the first instance, not why he believed appellant was intoxicated. This form constitutes only part of the evidence presented at the hearing. See Granville v. Havens (Aug. 21, 2000), Licking App. No. 00CA6, unreported. Given our resolution of the second assignment of error, the trial court's finding was supported by competent, credible evidence.
Appellant's third assignment of error is overruled.
 V.
In his fourth assignment of error, appellant argues that his appeal should have been sustained because the state failed to provide appellant with his statutory and constitutional rights. Appellant again argues that he was arrested for OMVI without probable cause and that his truck was broken into and he was seized unlawfully. As we have already addressed these arguments, we will not consider them again.
However, appellant also asserts that he was denied his constitutional and statutory right to counsel. As we held in State v. Matheny (July 28, 2000), Athens App. No. 00CA9, unreported, the right to counsel associated with the protection against self-incrimination contained in theFifth Amendment to the United States Constitution does not apply to the stage where the officer requests a chemical test for alcohol content. SeeDobbins v. Ohio Bureau of Motor Vehicles (1996), 75 Ohio St.3d 533, 537, citing Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826,16 L.Ed.2d 908. Similarly, a blood alcohol test is merely a preparatory step to the critical stage of the prosecution and the Sixth Amendment does not apply. Dobbins, supra, at 538. Therefore, neither appellant's Fifth orSixth Amendment right to counsel was implicated here.
Appellant also argues that his statutory right to counsel under R.C.2935.20 was violated. Appellant testified that he requested counsel at the Sheriff's Department; however, Trooper Maughmer testified that appellant never requested an attorney and Trooper Lanning testified that he could not recall if appellant asked to call his attorney.
Even if appellant made such a request, it has no bearing on the administrative license suspension. In Dobbins, supra, at 539, the Supreme Court of Ohio held that license suspension is mandatory upon refusal to take the test. "Whether the driver requests an attorney does not affect the requirement that the arrestee submit to the test for blood-alcohol content or accept the alternative of license suspension." Id. A violation of R.C. 2935.20 does not affect the propriety of a license suspension.
Therefore, appellant's fourth assignment of error is overruled.
Finding no merit in any of appellant's assigned errors, we affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 _______________________ William H. Harsha, Judge
Kline, J. Evans, J.: Concur in Judgment and Opinion